DISCIPLINARY COUNSEL v. TAYLOR.

[Cite as *Disciplinary Counsel v. Taylor,* 120
Ohio St.3d 366, 2008-Ohio-6202.]

(No. 2008–0820—Submitted July 22, 2008—Decided December 4, 2008.)

---

**Per Curiam.**

{¶ 1} We must decide in this case the appropriate sanction for a lawyer who, in an overzealous attempt to achieve what he believed to be his clients' wishes, disregarded professional standards for executing wills, powers of attorney, and deeds. Finding that the lawyer violated the Code of Professional Responsibility, the Board of Commissioners on Grievances and Discipline has recommended that we suspend the lawyer's license to practice for six months but conditionally stay the suspension. We agree that the lawyer committed professional misconduct as found by the board; however, to safeguard the public and provide needed oversight in the lawyer's practice, we order a one-year suspension, all stayed on conditions, including monitored probation.

{¶ 2} Respondent, Phillip Paul Taylor of Lorain, Ohio, Attorney Registration No. 0003465, was admitted to the practice of law in Ohio in 1962. Relator, Disciplinary Counsel, charged respondent in a four-count complaint with multiple violations of the Disciplinary Rules. A panel of the board heard the cause, including extensive stipulations, and made findings of misconduct and recommended the six-month stayed suspension. The board adopted the panel's findings and recommendation.

{¶ 3} Relator objects, arguing first that the board erred in failing to find that respondent had falsified a quitclaim deed as alleged in Count II of the complaint. Relator also contends that a one-year suspension from practice is warranted because of the magnitude of respondent's misconduct. As discussed in Part I(B) of our opinion, we find no clear and convincing evidence of falsification; however, as discussed in Part II, we sustain relator's objection to the extent that we order as the appropriate sanction a one-year suspension, stayed on the conditions of probation and monitoring.

## I. Misconduct

### A. Counts I and III—Improprieties in Respondent's Preparation of Powers of Attorney and Conveyance Instruments

{¶ 4} Juan Rios and his wife Piccola were respondent's good friends and clients for over 20 years. In May 2004, Juan consulted respondent, worried that Piccola's daughter, Joann Keys, had stolen money from his bank account. Juan and Piccola were both terminally ill, and Juan did not want Joann to inherit anything upon either's death. Instead, Juan wanted his own daughter, Elizabeth Rios, to receive everything.

{¶ 5} Respondent prepared a will for Juan, designating Elizabeth, who was living in Puerto Rico, as the sole beneficiary. Respondent made no provision in the will for Juan's wife. To defeat the surviving-spouse election that would have otherwise allowed Piccola to take against the will, respondent prepared a quitclaim deed with a dower clause, transferring the couple's home to Elizabeth. In addition, respondent prepared a durable power of attorney for Juan, giving Elizabeth complete authority over his affairs.

{¶ 6} On June 2, 2004, respondent went with his secretary to the Rioses' home to have the will, power of attorney, and quitclaim deed executed. Both Juan and Piccola were bedridden, and, unknown to respondent, Piccola was also suffering from dementia. Neither Juan nor Piccola could read English, and respondent spoke no Spanish. Elizabeth was also present that day, having recently arrived from Puerto Rico, but she could not speak or read English. Although Elizabeth had brought one of her relatives, Elba Torres, to interpret for her, no one interpreted for Juan and Piccola.

{¶ 7} Respondent never discussed with Piccola the significance of the instruments making Elizabeth Juan's sole beneficiary, the owner of the couple's home, and Juan's attorney-in-fact. He simply obtained Juan's signature on the will and power of attorney and, along with his secretary, signed the instruments as a witness. He then obtained Piccola's signature on the quitclaim deed and had Elizabeth sign the deed on Juan's behalf.

{¶ 8} On June 4, 2004, two days after respondent's meeting with the Rioses, Juan died. The next day, Piccola, who had been in and out of hospice facilities, was readmitted as an emergency placement. Shortly after Piccola's hospice placement, respondent prepared a will for her that devised all of her property to Elizabeth and designated Elizabeth as executor of her estate. Respondent also drafted a power of attorney giving Torres, because she spoke English, complete authority over Piccola's affairs.

{¶ 9} On June 8, 2004, respondent went to obtain signatures on the will and power of attorney despite Piccola's incapacitation and probable incompetence. Neither respondent nor any of the hospice staff had told Piccola of Juan's death, and at some point, she told respondent that she wanted to leave everything to her husband. Respondent nevertheless had Piccola sign the will and power of attorney. Torres later withdrew all the funds from Juan and Piccola's bank account and used none of them for Piccola's welfare.

{¶ 10} While purporting to act in a fiduciary capacity representing the potentially diverse interests of Juan and Piccola, respondent drew up papers to defeat Piccola's ownership of property for the benefit of Juan's daughter. Respondent could not have had Piccola's knowing consent, which would have required a translator and, in all likelihood, the appointment of a guardian. Respondent stipulated and we find that he thereby violated DR 5–105(B) (prohibiting a lawyer from continuing in multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected, unless the clients consent after full disclosure of attendant risks).

{¶ 11} While purporting to act in a fiduciary capacity representing the potentially diverse interests of Juan and Piccola, respondent had Piccola sign an instrument that gave away all her interest in the couple's home. He did not have her knowing consent to the transfer. Respondent stipulated and we find that he thereby violated DR 1–102(A)(4) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 5–105(A) (requiring a lawyer to decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected, unless the clients consent after full disclosure of attendant risks), and 5–105(B).

## B. Count II—Allegations of Falsification

{¶ 12} In preparing the quitclaim deed for the Rioses, respondent was required to identify the grantee's tax mailing address. Respondent listed Elizabeth's tax mailing address as the Rioses' residence, although at the time she still resided in Puerto Rico. The quitclaim deed was recorded on July 1, 2004.

{¶ 13} The tax mailing address on the quitclaim deed served to furnish county officials and the public with the designated address at which the property owner or the owner's agent would receive notice of tax assessments and other related filings. See, e.g., *Knickerbocker Properties, Inc. XLII v. Delaware Cty. Bd. of Revision,* 119 Ohio St.3d 233, 2008-Ohio-3192, 893 N.E.2d 457. Relator provided no evidence that the address respondent placed on the quitclaim deed was false when recorded or even that a better address existed. Having no evidence that respondent tried to deceive those entitled to rely on the tax mailing address, we reject relator's argument that he violated DR 1–102(A)(4) and (5) (prohibiting a lawyer from engaging in conduct prejudicial to the administration of justice).

### C. Count IV—Impropriety in the Guardianship Proceeding

{¶ 14} In July 2008, Yolonda Lee, Joann's daughter, applied to become her grandmother Piccola's guardian. Still trying to accomplish what he thought were the Rioses' wishes, respondent filed an appearance in the guardianship case, identifying himself as an amicus curiae. Respondent then asked the probate court to continue the hearing that was to determine Piccola's competency, advising the court that he represented Juan Rios, without mentioning that Juan was deceased. The probate court judge denied the request for continuance and did not allow respondent to participate further in the case.

{¶ 15} Respondent stipulated and we find that he violated DR 7–102(A)(5) (prohibiting a lawyer from knowingly making a false statement of law or fact) by misrepresenting himself as Juan's lawyer to the probate court.

## II. Sanction

{¶ 16} When imposing sanctions for attorney misconduct, we consider relevant factors, including the duties violated and sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli,* 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. "Before making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ('BCGD Proc.Reg.'). *Cleveland Bar Assn. v. Glatki* (2000), 88 Ohio St.3d 381, 384, 726 N.E.2d 993." *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. Because each disciplinary case is unique, we are not limited to the factors specified in the rule but may take into account "all relevant factors" in determining what sanction to impose. BCGD Proc.Reg. 10(B).

{¶ 17} Focusing on the aggravating and mitigating factors, relator insists that the board did not account for all that should have been weighed against respondent. Mainly, relator argues that the board did not consider the harm respondent caused to a vulnerable victim, see BCGD Proc.Reg. 10(B)(1)(h), and

that the board improperly weighed respondent's altruistic motive in his favor. Relator maintains that the mitigating factors do not offset the aggravating features of respondent's misconduct. And because an actual suspension from practice is required, absent significant evidence in mitigation, when a lawyer engages in a course of conduct that violates DR 1–102(A)(4), *Cincinnati Bar Assn. v. Statzer*, 101 Ohio St.3d 14, 2003-Ohio-6649, 800 N.E.2d 1117, ¶ 6 and 21, relator concludes that a one-year suspension is warranted.

{¶ 18} We disagree. In trying to protect the Rioses from one relative, respondent assumed that he knew Piccola's wishes, and his actions left her vulnerable. But his concern for the couple's welfare and his efforts in their behalf were undoubtedly sincere and selfless. Thus, this case is not like *Disciplinary Counsel v. King*, 103 Ohio St.3d 438, 2004-Ohio-5470, 816 N.E.2d 1040, cited by relator, in which a lawyer's purported altruism in taking on a client's case was overshadowed by the lies he later told to the client to conceal his neglect.

{¶ 19} Respondent typically represents clients of modest means for little or no fee, as he did in the Rioses' case, and we have attributed mitigating effect in recognition of such service. See *Dayton Bar Assn. v. Ellison*, 118 Ohio St.3d 128, 2008-Ohio-1808, 886 N.E.2d 836, ¶ 15. Moreover, with the exception of his lapses in the Rioses' case, respondent has had a nearly 50–year career of representing clients with integrity. Respondent has no prior disciplinary record, had no dishonest or selfish motive in this case, and cooperated in the disciplinary process with full and free disclosure, all of which are mitigating factors under BCGD Proc.Reg. 10(B)(2)(a), (b), and (d). Contrary to relator's claim, respondent also acknowledged the wrongfulness of his conduct, stipulating to more Disciplinary Rule violations than he committed.

{¶ 20} The disciplinary process exists "not to punish the offender but to protect the public from lawyers who are unworthy of the trust and confidence essential to the attorney-client relationship and to allow us to ascertain the lawyer's fitness to practice law." *Akron Bar Assn. v. Catanzarite*, 119 Ohio St.3d 313, 2008-Ohio-4063, 893 N.E.2d 835, ¶ 37, citing *Disciplinary Counsel v. Agopian*, 112 Ohio St.3d 103, 2006-Ohio-6510, 858 N.E.2d 368, ¶ 10, citing *Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 53, and *Ohio State Bar Assn. v. Weaver* (1975), 41 Ohio St.2d 97, 100, 70 O.O.2d 175, 322 N.E.2d 665. Given respondent's good faith in this case and his history of competent practice, the appropriate remedy here is to ensure that he strictly observes ethical standards. Placing respondent on probation under the auspices of a monitoring attorney appointed by relator will achieve these ends.

{¶ 21} We suspend respondent from the practice of law in Ohio for one year; however, the suspension is stayed on the conditions that respondent complete a

one-year probation period in accordance with the requirements of Gov.Bar R. V(9) and commit no further misconduct. If respondent fails to comply with the conditions of the stay and probation, he will serve the entire one-year suspension. Costs are taxed to respondent.

Judgment accordingly.

PFEIFER, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

MOYER, C.J., and LUNDBERG STRATTON and O'CONNOR, JJ., dissent.

---

**MOYER, C.J., dissenting.**

{¶ 22} I respectfully dissent from the majority decision in regard to the sanction imposed on respondent. Respondent's actions demonstrate an utter disregard for an attorney's fiduciary duties to his clients and an astonishing lack of judgment; his conduct warrants a stricter sanction than the stayed suspension imposed by the majority.

{¶ 23} While the majority opinion sets forth respondent's misconduct in full, a few points warrant further emphasis. Respondent stipulated that he encouraged a long-time client, who could not read English and could barely speak English, to sign documents that eliminated her interest in her home and changed her will contrary to her express instructions. Respondent admitted that he did not explain these documents to his client or attempt to gauge her competency to sign them, despite the fact that she was bedridden, battling cancer, and (unknown to respondent) suffering from dementia.

{¶ 24} Further, respondent stipulated that he had had his client sign a durable power of attorney without explaining it to her. This document gave power of attorney to an unrelated translator for a family member whom the client had known for only one week, merely because that person could speak English. The translator used this power to empty the client's bank account, and she did not use any of the money for the client's benefit.

{¶ 25} As the majority notes, respondent's conduct in the above-listed matters and others violated, inter alia, DR 1–102(A)(4), which prohibits an attorney from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. When an attorney violates DR 1–102(A)(4), he or she will ordinarily receive an actual suspension from the practice of law. See *Disciplinary Counsel v. Fowerbaugh* (1995), 74 Ohio St.3d 187, 658 N.E.2d 237, syllabus; *Cincinnati Bar Assn. v. Statzer*, 101 Ohio St.3d 14, 2003-Ohio-6649, 800 N.E.2d 1117, ¶ 21 (noting an exception to the rule for significant mitigating evidence).

{¶ 26} I see no reason to depart from the general rule in this case. Respondent's proffered mitigating evidence, that he did not act in his own self-interest,

has no prior disciplinary record, cooperated in the disciplinary proceedings, and frequently represents clients of modest means for minimal fees, does not outweigh his misconduct in this matter. He betrayed the trust of an infirm and vulnerable client, urging her to sign documents against her own interest, knowing that she did not understand them. His actions resulted in actual harm to the client that cannot be ignored.

{¶ 27} This serious misconduct warrants an actual suspension, not just a period of probation. I would therefore impose a one-year suspension from the practice of law, with six months stayed.

LUNDBERG STRATTON and O'CONNOR, JJ., concur in the foregoing opinion.

---

Jonathan E. Coughlan, Disciplinary Counsel, and Heather L. Hissom, Assistant Disciplinary Counsel, for relator.

Koblentz & Koblentz, Richard S. Koblentz, and Craig J. Morice, for respondent.