DISCIPLINARY COUNSEL *v.* MCCORD.

[Cite as *Disciplinary Counsel v. McCord,*

121 Ohio St.3d 497, 2009-Ohio-1517.]

*Attorney misconduct, including engaging in conduct involving fraud, deceit, dishonesty, or misrepresentation, engaging in conduct prejudicial to the administration of justice, using a misleading law firm name, and improperly sharing legal fees — Indefinite suspension.*

(No. 2008-1785 — Submitted December 17, 2008 — Decided April 7, 2009.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 03-073.

_____

**Per Curiam.**

{¶ 1}   Respondent, Michael McCord, Attorney Registration No. 0020304, was admitted to the practice of law in Ohio in 1977.   The Board of Commissioners on Grievances and Discipline recommends that we suspend respondent for two years with one year stayed upon conditions for creating a fictional law firm and for misconduct involving legal fees.   We agree that respondent committed these acts of misconduct, and we also find that respondent acted improperly in failing to pay a disputed expert-witness deposition fee and failing to pay child support while contesting that amount through the legal process.   In view of these serious ethical violations, we do not accept the board's recommended two-year suspension with one year stayed and instead indefinitely suspend respondent from the practice of law.

### I. Procedural History

{¶ 2}   Relator, Disciplinary Counsel, filed a complaint against respondent, alleging that he violated numerous Disciplinary Rules and Rules of

Professional Conduct in (1) failing to pay a disputed expert-witness deposition fee, (2) failing to pay contested child support, (3) using a misleading law firm name, and (4) accepting legal fees while suspended and improperly sharing legal fees.

{¶ 3} A panel of the board considered the case against respondent. The panel determined that relator proved only that respondent had used a misleading law firm name, accepted legal fees while he was suspended, and improperly shared legal fees, and it recommended that the other two charges be dismissed. After reviewing the aggravating and mitigating factors, the panel recommended suspending respondent for six months, with conditions for reinstatement. The board adopted the panel's findings of misconduct but determined that respondent should be suspended for two years with one year stayed on conditions.

{¶ 4} Both parties have filed objections to the board's decision. We will therefore review all four counts in the complaint.

## II. Counts against Respondent

### A. *Count One – Failure to pay disputed expert fee*

{¶ 5} This count arises from respondent's actions in connection with a deposition taken in *McCord v. McCord*, Franklin C.P. No. 96-DR-03-1234, a child-support matter against his ex-wife, Iris Cooper. Respondent, representing himself, requested the deposition of Theodore Johnson, an expert witness for Cooper. Respondent stated that he would pay Johnson for his preparation and deposition time.

{¶ 6} Immediately after the deposition ended, Johnson gave respondent a bill. Respondent gave Johnson a check for the full amount and noted in the memo that the payment was for "Ted's deposition"; he did not note that he was making the payment under protest or with any rights reserved.

{¶ 7} The next day, however, respondent stopped payment on the check, and Johnson's employer incurred bank charges for the returned item. Respondent

testified in his disciplinary hearing that he had stopped payment because he felt that Johnson was unprepared and gave incomplete and evasive answers. After payment was stopped, respondent refused to pay Johnson, leading Johnson to file a complaint with relator.

{¶ 8} Relator claims that respondent's conduct violated DR 1-102(A)(4) (a lawyer shall not "[e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation"), 1-102(A)(5) (a lawyer shall not "[e]ngage in conduct that is prejudicial to the administration of justice"), and 1-102(A)(6) (a lawyer shall not engage in "conduct that adversely reflects on the lawyer's fitness to practice law"). Both the panel and the board determined that relator did not prove by clear and convincing evidence that respondent violated these rules.

{¶ 9} We disagree. There is no dispute that respondent induced the expert to attend the deposition with the promise of compensation and then broke this promise once the deposition was completed. There is no foundation for the notion that this was a good-faith dispute over service rendered; it was simply a refusal to pay the fees promised.

{¶ 10} Respondent's reason for withholding payment — that he was dissatisfied with the expert's preparation and responses — is disingenuous at best. Respondent's proffered reasons for withholding payment are little more than after-the-fact excuse-making, and respondent has not made serious efforts to show that they are anything else.

{¶ 11} Moreover, respondent's own conduct does not add credence to his claim that he did not get a "discovery" deposition. Respondent completed the deposition and presented the expert with a check at the end, only to stop payment on that check the next day. Furthermore, the deposition was not without benefit to respondent; indeed, he paid to have the deposition transcribed and used the testimony in cross-examination of the expert. Despite respondent's claimed dissatisfaction with the deposition, there is no evidence that he asked the court to

compel the witness to testify, that he sought other court remediation, or that he asked the court to exclude the expert's testimony.

{¶ 12} Respondent's failure to pay the expert is consistent with his prior discipline for failure to meet an obligation to a client, *Disciplinary Counsel v. McCord*, 96 Ohio St.3d 21, 2002-Ohio-2587, 770 N.E.2d 571, and with Count Two of the complaint in this case, for failure to comply with court-ordered child-support obligations.

{¶ 13} Although the board distinguished this case from McCord's prior discipline on the grounds that in the previous case there was a court order commanding respondent to pay, this distinction does not change our conclusion. An attorney should pay his debts without a court order. As noted by relator, this court has repeatedly refused to approve applications to sit for a bar examination when the applicant has failed to "scrupulously honor all financial commitments." *In re Application of Manayan*, 102 Ohio St.3d 109, 2004-Ohio-1804, 807 N.E.2d 313, ¶ 14. We expect no less from those already admitted to the bar of Ohio.

{¶ 14} Thus, respondent's order to stop payment and refusal to honor his debt to the expert witness is conduct that reflects at least deceit and misrepresentation and violates DR 1-102(A)(4), 1-102(A)(5), and 1-102(A)(6). We therefore reject the recommendation of the panel and board and reinstate Count One of the complaint.

*B. Count Two – Failure to pay contested child support*

{¶ 15} This count pertains to respondent's failure to pay child support as determined by the trial court in *McCord v. McCord*. Respondent and Cooper had two children together, but the original divorce decree, entered in September 1999, did not require either party to pay child support. However, as part of the divorce settlement, respondent and Cooper split their jointly owned stock in a business called Glory Foods, with respondent receiving 35 percent of their stock and

Cooper keeping the remainder. The stock was subject to a buy/sell agreement that gave the business the option to buy back shares if they were sold.

{¶ 16} Although the record is unclear, it appears that the stock was held solely in Cooper's name. After the transfer was made from Cooper to respondent pursuant to the divorce decree, the business determined that there had been a sale of the stock and exercised its option to purchase respondent's shares for $2 million.

{¶ 17} Shortly thereafter, in January 2000, Cooper filed a motion asking the trial court to modify the divorce decree to require respondent to pay child support, claiming that there had been a change in circumstances. Respondent argued that the circumstances had not changed simply because he had sold some of his assets, and he argued that Cooper's stock was worth close to $4 million, given the value of his shares.

{¶ 18} The trial court ordered respondent to pay child support retroactive to 2000. The court also ordered respondent to pay $40,000 within 30 days while the full amount of the arrearage was being determined. Respondent failed to pay this amount and was held in contempt of court.

{¶ 19} The amount in arrears was originally determined to be $113,803.46; respondent filed objections and requested a mistake-of-fact hearing. After the mistake-of-fact hearing, the amount became $118,789.40. Respondent requested another mistake-of-fact hearing, appealed the determination, and appealed the underlying child-support order.

{¶ 20} Respondent continued to pursue his objections to the child-support determination for the next three years, proceeding through the legal system: (1) respondent's original appeal was dismissed for lack of a final, appealable order in March 2005, (2) the amount in arrears was upheld by the trial court on remand in January 2006, and respondent appealed again, (3) the trial court granted attorney fees against respondent in June 2006, and he appealed that decision, (4) the court

of appeals consolidated respondent's appeals and affirmed the trial court's decisions in both cases in January 2007, and (5) respondent filed an appeal in this court seeking discretionary review in March 2007, and we declined to accept the case for review on the merits.

{¶ 21} During this process, respondent was held in contempt of court at least two times, and the courts labeled his actions "dilatory," noting that he had "dragged this litigation far beyond what it should have been." Respondent also failed to pay the amount in arrears while these proceedings were ongoing. As a result, the trial court determined that he was in default of a child-support order. In view of this default, this court suspended respondent in September 2004 pursuant to Gov.Bar R. V(5)(A)(1). 103 Ohio St.3d 1439, 2004-Ohio-4620, 814 N.E.2d 500.

{¶ 22} After respondent filed his jurisdictional memorandum in this court, he and Cooper entered into a settlement agreement, whereby respondent agreed to pay Cooper $100,000 in child support to resolve all outstanding claims. Shortly thereafter, this court terminated respondent's interim suspension, approximately 31 months after it was imposed.

{¶ 23} Although neither the panel nor the board determined that respondent's conduct violated a Disciplinary Rule, relator claims that respondent's conduct violated DR 1-102(A)(5) and 1-102(A)(6). To support this argument, relator cites several cases in which we determined that attorneys had violated Disciplinary Rules for failure to pay outstanding child-support awards. See *Disciplinary Counsel v. Redfield*, 116 Ohio St.3d 262, 2007-Ohio-6039, 878 N.E.2d 10, ¶ 13; *Disciplinary Counsel v. Curry*, 112 Ohio St.3d 130, 2006-Ohio-6517, 858 N.E.2d 392, ¶ 20–23 (suspending respondent without credit for his interim suspension for being in default of a child-support order); *Disciplinary Counsel v. Geer*, 112 Ohio St.3d 124, 2006-Ohio-6516, 858 N.E.2d 388, ¶ 14–15 (same).

**{¶ 24}** We agree with relator. The above cases show that we have suspended attorneys for nonpayment of child support under DR 1-102(A)(5) and (6). While respondent was entitled to challenge the child-support determination through the appeals process, the contempt orders and the findings of the trial court demonstrate that respondent needlessly prolonged the child-support litigation and made a concerted effort to avoid paying court-ordered support while the process was ongoing (including creating a deceptively named law firm). These events, taken together, support finding violations of DR 1-102(A)(5) and (6), despite respondent's settlement of his child-support obligations prior to the exhaustion of all appeals.

**{¶ 25}** We therefore reject the recommendation of the panel and board and reinstate Count Two of the complaint.

### C. Count Three – Misleading law firm name

**{¶ 26}** Under this count, relator claims that respondent improperly held himself out as a member of entities named "McCord, Pryor & Associates," "McCord, Pryor & Associates Co., L.P.A.," and "McCord & Associates." Respondent's actions related to these purported entities raise three questions: (1) Was respondent ever a law partner with David E. Pryor? (2) Did respondent act inappropriately in forming an entity named "McCord, Pryor & Associates Co., L.P.A."? and (3) Did respondent have any associates that would justify using the term "and associates" in firm names?

**{¶ 27}** Pryor was admitted to the practice of law in 1982. In 2002, Pryor and his wife were killed in a plane crash. At the time of Pryor's death, he and respondent co-owned a building in Columbus where the two men maintained their law practices.

**{¶ 28}** Although respondent claims that he and Pryor held themselves out as a firm under the name "McCord, Pryor & Associates" for numerous years, they did not operate under any recognizable legal structure. They had separate clients,

separate IOLTA accounts, separate fee income, and separate law-related business expenses during Pryor's life.  Moreover, they did not have an agreement to share profits and losses; respondent readily admits that they shared attorney fees only on cases they worked on together, never on their separate cases.  Given these facts, it was improper for respondent to hold himself out as "McCord, Pryor & Associates."

{¶ 29} In 2005, respondent filed articles of incorporation with the Ohio secretary of state to form a professional corporation named "McCord, Pryor & Associates Co., L.P.A."  At the time he formed this organization, respondent's license was suspended under the interim child-support suspension discussed in Count Two, and Pryor had been dead for approximately two and a half years.  Respondent admits that he formed this organization solely to thwart his ex-wife's attempts to garnish his bank accounts to pay for his outstanding child-support order.  Respondent's actions in this regard were plainly improper.

{¶ 30} Finally, respondent claimed that the "firms" employed two individuals, Trent Turner and Jackie Lewis-Greer, as associates.  However, the evidence does not support this assertion.  Turner was paid a salary from a bank account containing funds related to the building respondent owned and his W-2 bore only respondent's name, not any of the purported firm names, as his employer.  At respondent's request, Lewis-Greer assumed the workers' compensation matters that Pryor was managing before his death, but she considered herself an independent contractor, received a 1099 tax form for her taxable income arising from this work (which is indicative of an independent-contractor relationship) instead of a W-2, and received only contingent fees, which were paid from respondent's IOLTA account, not from a payroll account.  Thus, it is clear that neither Turner nor Lewis-Greer was an associate of respondent.  Respondent acknowledges as much in his briefing before this court.

**{¶ 31}** The panel and the board determined that respondent violated numerous Disciplinary Rules and Rules of Professional Conduct:[1] DR 1-102(A)(4), 2-102(B) (a lawyer in private practice shall not practice under a misleading firm name), and 2-102(C) ("A lawyer shall not hold himself or herself out as having a partnership with one or more other lawyers or professional corporations unless they are in fact partners"), and Prof.Cond.R. 7.5(a) (a lawyer in private practice shall not use a misleading firm name), 7.5(d) ("Lawyers may state or imply that they practice in a partnership or other organization only when that is the fact"), 8.4(b) (a lawyer shall not "commit an illegal act that reflects adversely on the lawyer's honesty or trustworthiness"), 8.4(c) (a lawyer shall not "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation"), 8.4(d) (a lawyer shall not "engage in conduct that is prejudicial to the administration of justice"), and 8.4(h) (a lawyer shall not "engage in any other conduct that adversely reflects on the lawyer's fitness to practice law").

**{¶ 32}** Respondent argues that he never intended to deceive or mislead the public. However, the only relevant consideration is whether respondent performed the unethical acts; his subjective intent in doing so does not change the analysis. See *Disciplinary Counsel v. Bell* (1984), 15 Ohio St.3d 118, 120, 15 OBR 269, 472 N.E.2d 1069. Thus, even if we believed that respondent did not intend to deceive the public, it is clear that he performed deceptive acts that violated the aforementioned Disciplinary Rules and Rules of Professional Conduct. We therefore adopt the board's findings of misconduct under this count.

*D. Count Four – Misconduct involving legal fees*

**{¶ 33}** In the final count of the complaint, relator alleges that respondent engaged in misconduct in three distinct ways: (1) he paid himself attorney fees

---

1. Respondent's actions under this count occurred both before and after the effective date of the Ohio Rules of Professional Conduct, February 1, 2007, and thus both the former (the Disciplinary Rules of the Code of Professional Responsibility) and current set of ethical standards apply.

while he was suspended from the practice of law, (2) he shared fees with Lewis-Greer without an appropriate fee-sharing agreement, and (3) he made misrepresentations in discussing these matters with relator.

{¶ 34} Respondent maintained an IOLTA account under the name "McCord & Associates" over the course of the interim child-support suspension imposed by this court. Over that 31-month period, respondent received and deposited client funds into this IOLTA account approximately 90 times. Most of those deposits were payments to claimants from the Ohio Bureau of Workers' Compensation or workers' compensation payments to persons from self-insured employers. Respondent generally received these funds because the claimants had listed "McCord Pryor & Associates" as their designated representative on the relevant workers' compensation forms.

{¶ 35} Respondent would deposit these payments in the IOLTA account and then write three checks from the account: one to the relevant client for two-thirds of the amount deposited, one to Lewis-Greer (who worked on the workers' compensation cases) for one-sixth of the amount deposited, and one to himself for the remaining one-sixth of the amount deposited. The record reveals that, through this process, respondent paid himself $69,350.76 in 2005, $47,564.56 in 2006, and $2,587.95 in 2007, all while he was suspended from the practice of law.

{¶ 36} We agree with the panel and the board that this evidence demonstrates that respondent accepted legal fees while he was suspended from the practice of law. Further, we agree that respondent improperly shared legal fees with Lewis-Greer, given the fact that they did not have a fee-sharing agreement for these matters and Lewis-Greer was not respondent's associate or employee.

{¶ 37} In response to a letter from relator regarding these transactions, respondent sent a letter with the following explanation of his actions:

{¶ 38} "I still maintain an IOLTA in my name because I have a law firm. The firm has a lot of workers compensation clients. The clients are represented [by] an associate counsel in the firm. She has been representing these workers compensation clients since the death of my law partner in December 2002. The client's workers compensation checks come in the name of the client and the firm. Those checks are deposited into the IOLTA account and checks are written to the clients out of that account. At this point, no one [else] has access to that account.

{¶ 39} "My only involvement with that account is purely CLERICAL. I do not counsel, advise, or prepare legal instruments for any client. In fact, because I mail the check or the client picks up the check when I am not in the office, I hardly ever see the client." (Capitalization sic.)

{¶ 40} We agree with the panel and board that these statements were false and misleading. Respondent never properly formed a law firm, and Lewis-Greer never operated as his associate. In addition, respondent did much more than perform a simple clerical function; he was paying himself legal fees and was the only person managing the trust account.

{¶ 41} In objecting to the board's decision, respondent offers only that he was unsure of what rights he had to use his IOLTA account under this court's interim suspension order. However, ignorance of the rules is not an excuse for misconduct. Respondent could have easily sought clarification if he was confused; because he did not, he must accept the consequences of his actions.

{¶ 42} Although relator alleged that respondent violated numerous ethical rules under this count, the panel and the board determined that respondent violated only DR 1-102(A)(6), 2-102(B), 2-106(A) ("A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee"), and 2-107(A) (lawyers that are not in the same firm may divide fees only in certain specific circumstances), and Prof.Cond.R. 1.5(e) (same), 7.5(a) and (d), and 8.4(h). We adopt these findings.

### III. Sanction

**{¶ 43}** To determine an appropriate sanction for respondent's misconduct, "we consider the duties violated, respondent's mental state, the injury caused, the existence of aggravating or mitigating circumstances, and applicable precedent." *Disciplinary Counsel v. Evans* (2000), 89 Ohio St.3d 497, 501, 733 N.E.2d 609. We address each factor in turn.

*A. Duties violated and injury caused*

**{¶ 44}** As set forth above, respondent violated numerous Disciplinary Rules and Rules of Professional Conduct relating to honesty and trustworthiness, performed actions that reflect adversely on his fitness to practice law, failed to pay a valid debt related to a deposition, abused the legal process in the course of his child-support proceedings, failed to pay child support as required by court orders, acted deceptively to the public, committed improprieties in dealing with attorney fees at a time when he was suspended from the practice of law, and hindered the disciplinary process by providing relator with false information. These actions harmed the public, respondent's ex-wife and children, and the expert witness that respondent refused to pay, and hindered the administration of justice.

*B. Mental state*

**{¶ 45}** There has been no evidence presented regarding respondent's mental state, and thus we presume that he was healthy and unhindered in that regard.

*C. Aggravating and mitigating circumstances*

**{¶ 46}** We adopt the findings of numerous aggravating circumstances that the board made: (1) respondent has been disciplined previously, see *Disciplinary Counsel v. McCord*, 96 Ohio St.3d 21, 2002-Ohio-2587, 770 N.E.2d 571 (six-month stayed suspension for failure to pay a fee arbitration award), (2) respondent acted selfishly and dishonestly when he formed McCord, Pryor & Associates Co.,

L.P.A., in 2005 to evade his ex-wife's attempts to garnish his assets pursuant to the outstanding child-support order, (3) respondent acted selfishly, deceptively, and dishonestly in paying himself attorney fees from his IOLTA account while he was suspended from the practice of law, (4) respondent engaged in a pattern of misconduct that took place over years, (5) respondent was not completely honest during the disciplinary process and at one point provided materially false information to relator, and (6) respondent failed to acknowledge the wrongful nature of his conduct. BCGD Proc.Reg. 10(B)(1)(a) through (g).

**{¶ 47}** The only mitigating circumstance that the board recognized was the fact that respondent was suspended from the practice of law for 31 months under the interim child-support suspension. The board considered this suspension to be a quasi-mitigating factor under BCGD Proc.Reg. 10(B)(2)(f), which allows the board to consider the imposition of other penalties or sanctions in mitigation. The board noted that it did not afford this previous suspension much weight in view of the fact that respondent continued to receive fees from the practice of law while suspended.

**{¶ 48}** We do not afford this factor any weight. Respondent does not appear to have learned from his previous sanction; in fact, he essentially ignored it by continuing to collect attorney fees on a regular basis during the suspension. Whatever mitigating weight this suspension may have offered is far outweighed by his willful disregard of this court's orders during that time.

**{¶ 49}** Respondent has not offered any evidence to support other mitigating factors beyond his own self-serving statements that he did not intend to violate the Disciplinary Rules or deceive the public. These statements are not supported by his actions, and we afford them no weight.

*D. Applicable precedent*

13

**{¶ 50}** Because respondent violated DR 1-102(A)(4), he will be subject to an actual suspension from the practice of law. *Disciplinary Counsel v. Stollings*, 111 Ohio St.3d 155, 2006-Ohio-5345, 855 N.E.2d 479, ¶ 13.

**{¶ 51}** Although there are no cases that present violations identical to those respondent committed, we recognize a few cases that present similar violations. In *Disciplinary Counsel v. Watson,* 98 Ohio St.3d 181, 2002-Ohio-7088, 781 N.E.2d 212, Watson violated several of the same Disciplinary Rules as the respondent here, including DR 1-102(A)(4), 2-102(B), and 2-102(C), by using a false firm name when he was actually a solo practitioner and by committing misconduct in the disciplinary process. Id. at ¶ 5, 9. We imposed a two-year suspension with one year stayed on conditions for his misconduct. Id. at ¶ 15.

**{¶ 52}** In *Dayton Bar Assn. v. Rogers*, 116 Ohio St.3d 99, 2007-Ohio-5544, 876 N.E.2d 923, we suspended Rogers for two years for billing clients for work that he did not do and for stretching the truth in his billing practices. Id. at ¶ 18–19. These actions are similar to respondent's misconduct, in that respondent continued to pay himself legal fees while he was suspended from the practice of law based on workers' compensation work that he did not perform.

**{¶ 53}** In *Columbus Bar Assn. v. Finneran* (1997), 80 Ohio St.3d 428, 687 N.E.2d 405, we indefinitely suspended Finneran for, among other things, various dilatory practices in legal matters and the failure to cooperate with the legal process, as was the case with respondent. Id. at 432.

**{¶ 54}** Finally, in *Disciplinary Counsel v. Zingarelli* (2000), 89 Ohio St.3d 210, 729 N.E.2d 1167, we indefinitely suspended Zingarelli for, among other things, failing to properly comply with the requirements for fee-sharing under DR 2-107(A) and violating DR 2-106(A), as respondent did here. Id. at 219–220, 222.

*E. Determination*

**{¶ 55}** Respondent committed a series of acts of misconduct, and he cannot demonstrate a single mitigating factor to counterbalance the extensive aggravating evidence against him. In view of all these factors, we do not adopt the board's recommended sanction and instead indefinitely suspend respondent from the practice of law. Before he may be readmitted, respondent must first fulfill all the requirements in Gov.Bar R. V(10), including demonstrating that he "possesses all the mental, educational, and moral qualifications that were required of an applicant for admission to the practice of law in Ohio at the time of his * * * original admission and that he * * * is now a proper person to be readmitted to the practice of law in Ohio, notwithstanding the previous disciplinary action." Gov.Bar R. V(10)(C)(5). Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and LANZINGER, JJ., concur.

CUPP, J., concurs in part but would not reinstate Count One.

PFEIFER, J., dissents and would suspend the respondent from the practice of law in Ohio for two years, with one year stayed.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Lori J. Brown, First Assistant Disciplinary Counsel, for relator.

Bricker & Eckler, L.L.P., and Alvin E. Mathews Jr., for respondent.

_____