DISCIPLINARY COUNSEL *v.* ROHRER.

[Cite as *Disciplinary Counsel v. Rohrer*, 124 Ohio St.3d 65, 2009-Ohio-5930.]

*Attorney misconduct — Lying to a court — Mitigation — Service to indigent*
*clients is mitigating but does not immunize an attorney from discipline —*
*License suspension ordered.*

(No. 2009-0719 — Submitted July 14, 2009 — Decided November 17, 2009.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and
Discipline of the Supreme Court, No. 08-066.

_____

**Per Curiam**.

{¶ 1} Respondent, David A. Rohrer of Greenville, Ohio, Attorney Registration No. 0042428, was admitted to the practice of law in Ohio in 1989. The Board of Commissioners on Grievances and Discipline recommends that we suspend respondent's license to practice for six months, staying the suspension upon conditions, for respondent's conduct in deliberately violating a court order and then misrepresenting to that court his responsibility for that misconduct.

{¶ 2} We agree that respondent violated the Rules of Professional Conduct as found by the board, but we conclude that respondent's deliberate violation of a court order followed by his dishonesty in explaining his behavior to the court and others warrants an actual six-month suspension from the practice of law.

### I. Procedural History

{¶ 3} Relator, Disciplinary Counsel, filed a complaint alleging that respondent violated five of the Rules of Professional Conduct: Prof.Cond.R. 3.3(a)(1) (a lawyer shall not knowingly make or fail to correct a false statement of fact to a tribunal), 3.4(c) (a lawyer shall not knowingly disobey an obligation

under the rules of a tribunal), 8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), 8.4(d) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice), and 8.4(h) (a lawyer shall not engage in conduct that adversely reflects upon his fitness to practice law). Respondent stipulated that his conduct violated all but the last of those rules and stipulated to certain of the underlying facts.

{¶ 4} A panel of the Board of Commissioners on Grievances and Discipline heard the case and concluded that respondent had committed five violations of the Rules of Professional Conduct, four of which were stipulated violations. The panel also found by clear and convincing evidence that respondent's conduct adversely reflected upon his fitness to practice law in violation of Prof.Cond.R. 8.4(h). The panel recommended a six-month suspension from the practice of law, with the entire suspension stayed on the condition of no further misconduct. The board adopted the panel's findings and sanction, recommending a stayed six-month suspension.

{¶ 5} Relator objects to the recommended stayed six-month suspension and requests that this court impose an actual six-month suspension.

## II. Misconduct

### A. Facts

{¶ 6} The parties before the board stipulated to the following facts giving rise to the disciplinary complaint:

{¶ 7} On September 25, 2007, respondent was appointed to represent a ten-year-old juvenile in a case filed in juvenile court by the Darke County prosecuting attorney. The complaint alleged five delinquency counts of murder and one delinquency count of aggravated arson as a result of a September 16, 2007 fire that killed the juvenile's mother and sister and three other children. That same day, the juvenile was remanded to the custody of West Central Juvenile Detention Center in Troy, Ohio.

{¶ 8} On September 26, 2007, Darke County Juvenile Court Judge Michael McClurg sealed the court file. On September 28, 2007, Judge McClurg issued a verbal order that prohibited respondent and the prosecuting attorney from discussing the case with the media. The juvenile court journalized that order on October 24, 2007.

{¶ 9} On September 27, 2007, respondent filed a request for discovery with the Darke County Juvenile Court. On October 5, 2007, respondent filed a motion seeking an order to compel the Darke County prosecuting attorney to promptly provide a response to respondent's discovery request.

{¶ 10} On that same day, respondent directed a member of his office staff to deliver a copy of this motion to the Darke County Daily Advocate newspaper. The attached memorandum asserted, "Counsel for the minor child is also concerned by the failure of the State of Ohio to provide discovery in a timely manner due to the fact that the Assistant Prosecuting Attorney Phillip Hoover has already been admonished in prior * * * cases for withholding discovery or springing surprise discovery immediately prior to trial." Sharing this material with the Daily Advocate violated Judge McClurg's order prohibiting communications with the media in this juvenile case. The October 9, 2007 edition of the Daily Advocate included an article on the motion to compel discovery filed by respondent.

{¶ 11} On October 11, 2007, Judge McClurg conducted a hearing to address the Daily Advocate article and determine whether respondent had violated the court's order regarding communications with the media.

{¶ 12} At this hearing, respondent made the following statements:

{¶ 13} "I said some things to my staff that I believe * * * was misconstrued, but I'm not going to hold them responsible and I believe that a copy * * * of that motion later on in the day got delivered over there without my knowledge.

{¶ 14} "* * *

{¶ 15} "I take responsibility for that because if they thought that that was my intent or that's what I wanted to happen, and they did that, then that's still my responsibility. It was * * * not my intent."

{¶ 16} These statements to the court were false and misleading.

{¶ 17} On or about November 7, 2007, Hoover filed a grievance with the Darke County Bar Association concerning respondent's conduct and sent a copy of the grievance to Judge McClurg. On November 29, 2007, Judge McClurg issued the entry pursuant to the October 11 hearing, concluding that respondent had violated the court order prohibiting communication with the media.[1]

{¶ 18} In March 2008, Judge McClurg found the juvenile not competent to face juvenile-delinquency charges against him and dismissed the pending charges.

{¶ 19} In addition to the stipulated facts, the board found that respondent's assistant, Daphne Laux, had told the prosecutor's office that respondent had instructed her to send the motion to compel to the newspaper. The board also found that respondent had terminated Laux because she had violated respondent's office policy against divulging confidential information about cases. The board noted that "[i]n a subsequent letter to the unemployment bureau concerning her termination, [respondent] again suggested that Ms. Laux was responsible for sending the motion to the newspaper."

*B. Violations of the Rules of Professional Conduct*

{¶ 20} The board first found that respondent had violated the four Rules of Professional Conduct to which the parties stipulated, and we agree. With regard to Prof.Cond.R. 3.4(c), respondent knowingly told a member of his staff to deliver a copy of his motion to compel to the local newspaper, in defiance of the juvenile

---

1. The juvenile court judge sanctioned respondent, but ordered the sanction purged so long as respondent committed no further violations of the court's order.

court's order prohibiting communications with the media. Respondent violated Prof.Cond.R. 3.3(a)(1) and 8.4(c) by knowingly telling the juvenile court judge at the October 11, 2007 hearing that his staff had "misconstrued" his directions, when in fact, he had told them to deliver the motion to the newspaper. He also made false statements to the court when he said that the motion had been delivered to the newspaper "without [his] knowledge" and that it "was not [his] intent." He knew that these statements were false. These actions—deliberately violating a court order and lying to the court about it—also constitute conduct that is prejudicial to the administration of justice in violation of Prof.Cond.R. 8.4(d).

**{¶ 21}** Additionally, respondent's November 29, 2007 letter to the unemployment-compensation bureau was misleading, indicating that "after meeting with" the juvenile court judge, respondent "informed" the judge that the order violation "was completely [respondent's] fault" and that respondent "took full responsibility" for that action, even though respondent at the disciplinary hearing admitted that he had not accurately told the judge what had happened, either during the October 11 hearing or off the record afterward. In a December 9, 2007 letter to the unemployment-compensation bureau, respondent repeated his statement that he "took full responsibility for [his] action before Judge McClurg."

**{¶ 22}** In the November 29 letter, respondent also said, "I do not know where Ms. Laux would come up with saying that 'I lied,' " even though respondent later admitted telling his staff on October 11 that he had "fudged" what he told the juvenile court.[2] This letter to the unemployment-compensation bureau was sent well after respondent's October 11, 2007 hearing before the juvenile court, and it contained misleading statements about the events

---

2. The board found that respondent's November 29, 2007 letter to the unemployment-compensation bureau suggested that his former employee, Laux, was responsible for sending the motion to the newspaper. We do not agree, but we find that the record shows a different misstatement to the unemployment-compensation bureau, as described above.

surrounding the October 11 hearing. We therefore conclude that this conduct violates Prof.Cond.R. 8.4(c).[3]

**{¶ 23}** Regarding Prof.Cond.R. 8.4(h), the board found a violation despite its statement that "[b]ased upon the panel's inability to discern whether respondent's conduct was impulsive or not * * *, the panel does find by clear and convincing evidence that his conduct adversely reflected upon his fitness to practice law." Respondent disputed this violation before the panel of the board. We agree with the board's finding that respondent's conduct violated Prof.Cond.R. 8.4(h). While the "impulsiveness" of respondent's conduct (or lack thereof) is not the sole measure of whether his conduct violated Prof.Cond.R. 8.4(h), we address this point, on which the board's findings are less than clear.

**{¶ 24}** Our review of the evidence presented at the disciplinary hearing indicates that respondent made a deliberate decision to violate the court's order by providing the media with a copy of the motion to compel. His discovery request was slightly more than a week old when he filed his motion to compel, and he provided it to the media on the day he filed it. Respondent testified at his disciplinary hearing that he violated the court's order because he believed that disclosing the motion to the media would make it more likely that he would get the discovery that he sought and that he did get his discovery. Respondent testified: "I know I violated a gag order and that is an incorrect thing to do * * * Yet, justice got served by the breaking of that gag order." Under the circumstances, we believe that respondent's violation of the juvenile court's order was not impulsive, but rather was a deliberately chosen action.

---

3. We do not address the contentions about the circumstances surrounding respondent's firing of Laux or the reasons for her termination. Respondent claims that he fired her for breaching confidentiality about a client's case (by informing the prosecutor of respondent's disobedience of the court's order). We note, as did one of the panel members in this case, that respondent himself had a duty to report his own professional misconduct to a disciplinary authority. See Prof.Cond.R. 8.3(a).

{¶ 25} Additionally, respondent's justification during the disciplinary hearing of his false statements to the juvenile court is inconsistent with his claim that those statements were impulsively made. Respondent admitted misrepresenting to the juvenile court in the October 11, 2007 hearing that his staff "misconstrued" what respondent had told them and that it "was not his intent" to disclose the motion to the media. In his disciplinary hearing, respondent testified that during the October 11 hearing, he became concerned that the juvenile court judge would remove him from the case. Respondent claimed that his concern about possibly being removed from representing the juvenile prompted him to mislead the judge about his role in providing the motion to the media. Respondent's admitted calculation about what to tell the judge to ensure his continued representation of his client indicates that respondent prevaricated in answering the judge's questions about the incident. He then continued to make misleading statements to the state unemployment-compensation bureau in his letters to that agency contesting his former employee's benefits claim. We find his statements to the juvenile court to be a deliberately chosen course of conduct.

{¶ 26} Deliberately disobeying a court order, then lying about it to the judge during a court hearing on the matter, is not justified by an otherwise commendable desire to protect a client and engage in zealous advocacy. There were legitimate ways for respondent to protect his client's interests; this conduct was not among them.

### III. Sanction

{¶ 27} The parties dispute the appropriate sanction for respondent's misconduct. The panel recommended a six-month suspension, stayed on condition of no further misconduct, and the board adopted that recommendation. Relator objected to the board's recommended sanction. Relator argues that an actual six-month suspension of respondent from the practice of law is warranted, urging that

the panel and board erred in declining to find that several aggravating factors were present.

**{¶ 28}** We determine the proper sanction for violations of the Rules of Professional Conduct by consideration of the duties violated, respondent's mental state, the injury caused, the existence of aggravating or mitigating circumstances, and applicable precedent. *Cincinnati Bar Assn. v. Farrell*, 119 Ohio St.3d 529, 2008-Ohio-4540, 895 N.E.2d 800, ¶ 14. We now address each of these factors as they apply to the facts of this case.

### A. Duties Violated and Injury Caused

**{¶ 29}** Respondent's deliberate disobedience of a court order and knowing misrepresentations to the juvenile court judge, as well as his misleading statements in letters to the unemployment-compensation bureau, led to violations of five Rules of Professional Conduct.

**{¶ 30}** While respondent's misconduct did not appear to prejudice his client—who was later found incompetent to stand trial—a lawyer's behavior of flouting court orders and lying to a court prejudices the administration of justice. See, e.g., *Cleveland Bar Assn. v. Herzog* (1999), 87 Ohio St.3d 215, 216, 718 N.E.2d 1274 (respondent testified falsely before bankruptcy court and was "less than candid" in response to efforts to discover his assets in the bankruptcy case; six-month suspension imposed). In *Disciplinary Counsel v. Fowerbaugh* (1995), 74 Ohio St.3d 187, 190, 658 N.E.2d 237, we explained: "A lawyer who engages in a material misrepresentation to a court * * * violates, at a minimum, the lawyer's oath of office that he or she will not 'knowingly * * * employ or countenance any * * * deception, falsehood, or fraud.' Gov.Bar R. I(8)(A). Such conduct strikes at the very core of a lawyer's relationship with the court and with the client. Respect for our profession is diminished with every deceitful act of a lawyer."

### B. Mental State

**{¶ 31}** Respondent has presented no evidence that his mental state was a factor in his professional misconduct. Accordingly, we presume that his mental state was healthy during the relevant period. *Disciplinary Counsel v. McCord*, 121 Ohio St.3d 497, 2009-Ohio-1517, 905 N.E.2d 1182, ¶ 45.

### *C. Aggravating and Mitigating Circumstances*

**{¶ 32}** Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.") provides a nonexhaustive list of aggravating and mitigating circumstances that may be considered in disciplinary cases. As mitigating factors, the board found that respondent has no prior disciplinary record, that he displayed a cooperative attitude toward the disciplinary proceedings, that the juvenile court had already imposed sanctions on him, and that he presented character witnesses attesting to his good character and reputation. (The parties stipulated to the first two mitigating factors.) While the board did not specifically find as a mitigating factor that respondent lacked a selfish motive for his misconduct, see BCGD Proc.Reg. 10(B)(2)(b), the board opined that the same mitigating factors present in *Disciplinary Counsel v. Carroll*, 106 Ohio St.3d 84, 2005-Ohio-3805, 831 N.E.2d 1000, ¶ 14, including lack of a selfish motive, were present in this case. Because this mitigating factor and the aggravating factor of a dishonest or selfish motive are opposite sides of the same coin, we discuss them together.

**{¶ 33}** The board found no aggravating factors in this case. The panel declined to find that respondent had engaged in a pattern of misconduct, had acted from a selfish or dishonest motive, or had made false statements during the disciplinary process. Relator urges us to find, instead, that these factors were present, as well as that respondent committed multiple acts of misconduct. (The panel did not address whether respondent committed multiple offenses, an

aggravating factor under BCGD Proc.Reg. 10(B)(1)(d).) We address these contentions in turn.

{¶ 34} Based on our review of the record, we find that respondent committed multiple offenses. After violating the juvenile court's order, respondent lied to the juvenile court, suggesting that his staff member was responsible for conduct in violation of the juvenile court's order. Then respondent made misleading statements to the unemployment-compensation bureau, including that he did not know where his former employee came up with the idea that he had lied to the juvenile court, when he admits that he told his staff that he had "fudged" what he told that court. Respondent also told the bureau that he had taken full responsibility for his action before the juvenile court when he had not. Respondent's violating a court order, followed by his repeated misrepresentations—first to a court, and then to a state agency charged with determining contested unemployment-compensation claims—constitutes "multiple offenses" under BCGD Proc.Reg. 10(B)(1)(d). See, e.g., *Disciplinary Counsel v. Willard*, 123 Ohio St.3d 15, 2009-Ohio-3629, 913 N.E.2d 960, ¶ 24 (concluding that respondent in that case had committed multiple offenses in his representation of each individual client). Accordingly, we conclude that the aggravating factor of multiple offenses was present. While we think that the board's conclusion that the aggravating factor of a pattern of misconduct was absent is debatable,[4] we do not overturn it.

---

4. With regard to the "pattern of misconduct" factor, the board opined: "[R]espondent's false statements to the court * * * compris[ed] a single, inaccurate cover story. His extrajudicial statements concerning Ms. Laux in the letter to the unemployment bureau, while they pertain to the same general subject matter as his statements in court, are not sufficiently linked to those in-court statements (for example, they were made several months after the case ended) to constitute any salient 'pattern' of deception on respondent's part."

{¶ 35} The board also declined to find that respondent had acted with a selfish or dishonest motive. See BCGD Proc.Reg. 10(B)(1)(b). The board opined that it did "not have a sufficient basis for finding as an aggravating factor that he acted with a dishonest or selfish motive, since, as note[d] above, acting with such a motive seems to us inconsistent with acting impulsively."

{¶ 36} Upon our review of the record, we conclude that the evidence establishes that respondent exhibited a selfish or dishonest motive in misrepresenting to the juvenile court his role in violating that court's order, and later in writing a misleading letter to the unemployment-compensation bureau.

{¶ 37} First, with regard to respondent's misrepresentations to the juvenile court, respondent testified at the disciplinary hearing that he lied in order to avoid being removed from representing his client in the underlying juvenile case. (However, even if respondent had been motivated by a desire to stay on the case to help his client, it seems fair to conclude that he had also sought to preserve his reputation with the court.)

{¶ 38} Additionally, in later misleadingly suggesting in a letter to the unemployment-compensation bureau that he had taken full responsibility for his actions before the juvenile court and that he did not know where his former employee got the idea that he had lied to the court, respondent's interest in maintaining his credibility with the bureau, and in winning the contested unemployment-compensation case, was at stake. Whether or not he prevailed in that matter did not directly affect his client in the juvenile court matter. Respondent's interest in how the contested unemployment-compensation proceeding turned out was a selfish motive for his misrepresentation to the unemployment-compensation bureau. These facts show that respondent acted from a selfish motive within the meaning of BCGD Proc.Reg. 10(B)(1)(b).

{¶ 39} Relator also urges us to conclude that respondent made false statements during the disciplinary process when he downplayed his misstatements

to the juvenile court in a letter to relator. See BCGD Proc.Reg. 10(B)(1)(f). The board declined to find this aggravating factor. We will not disturb the board's finding in this regard. We note that relator stipulated to the mitigating factor that respondent displayed a cooperative attitude during the disciplinary process. BCGD Proc.Reg. 10(B)(2)(d). This fact seems inconsistent with a finding that respondent made a false statement during the disciplinary process.

{¶ 40} Finally, relator urges us to conclude that respondent has failed to show remorse for his misconduct. At least with regard to violating the court's order, respondent, as noted above, has attempted to justify his conduct by the results—that he got his discovery after he deliberately sent the motion to the newspaper in violation of the court order. Respondent testified at one point: "[J]ustice got served by the breaking of that gag order." We agree that this self-justification shows lack of remorse. See BCGD Proc.Reg. 10(B)(1)(g).

*D. Applicable Precedent*

{¶ 41} We have held that "[w]e will not allow attorneys who lie to courts to continue practicing law without interruption." *Herzog*, 87 Ohio St.3d at 217, 718 N.E.2d 1274, citing *Toledo Bar Assn. v. Batt* (1997), 78 Ohio St.3d 189, 192, 677 N.E.2d 349. As we noted in *Fowerbaugh*, 74 Ohio St.3d at 190, 658 N.E.2d 237:

{¶ 42} "A lawyer who engages in a material misrepresentation to a court * * * violates, at a minimum, the lawyer's oath of office that he or she will not 'knowingly * * * employ or countenance any * * * deception, falsehood, or fraud.' Gov.Bar R. I(8)(A). Such conduct strikes at the very core of a lawyer's relationship with the court and with the client. Respect for our profession is diminished with every deceitful act of a lawyer. We cannot expect citizens to trust that lawyers are honest if we have not yet sanctioned those who are not."

{¶ 43} Accordingly, we have held, "When an attorney engages in a course of conduct resulting in a finding that the attorney has violated [the rule prohibiting

dishonesty, fraud, deceit, or misrepresentation], the attorney will be actually suspended from the practice of law for an appropriate period of time." *Fowerbaugh*, 74 Ohio St.3d at 190, 658 N.E.2d 237.

{¶ 44} In *Herzog*, 87 Ohio St.3d at 217, 718 N.E.2d 1274, we suspended a lawyer from the practice of law for six months for misconduct that included lying to a bankruptcy court. Herzog had filed for bankruptcy in order to avoid a malpractice judgment against him. Id. at 216. During the bankruptcy proceeding, Herzog testified falsely that he had stopped practicing law two years earlier and did not have any new clients after that time. Id. He also failed to produce all supporting documentation for his income tax returns and failed to explain his interest in certain assets. Id.

{¶ 45} *Herzog* is similar to this case. Here, though, the board distinguished *Herzog* because Herzog's misrepresentations to the bankruptcy court were to serve his own financial interest and actually impeded the resolution of the bankruptcy case. The board opined that respondent's misrepresentations to the juvenile court were an "isolated" part of the proceedings in his client's case and had no effect on the rest of that case. We conclude, however, that respondent also acted with a selfish motive in this case. The fact that respondent's client's case was resolved notwithstanding respondent's misrepresentations to the juvenile court does not change the fact that "a misrepresentation to a court is a misrepresentation to a court," to quote the panel. Absent significant mitigating factors that warrant a departure from the principle announced in *Fowerbaugh*, 74 Ohio St.3d 187, 658 N.E.2d 237, an actual suspension from the practice of law is appropriate.

{¶ 46} Respondent relies on *Disciplinary Counsel v. Taylor*, 120 Ohio St.3d 366, 2008-Ohio-6202, 899 N.E.2d 955, to support his plea for a stayed suspension. In *Taylor*, the lawyer sought a continuance in a matter but failed to disclose that his client was deceased. Id. at ¶ 14. The lawyer also obtained a

client's signature on a quitclaim deed and other documents without explaining their significance to one of the clients, who was bedridden and could not read English. The court concluded that the lawyer had acted out of a desire to advance what he believed to be his client's interests but nonetheless had violated the Disciplinary Rules, including DR 7-102(A)(5) (knowingly making a false statement of fact). Because of the lawyer's "undoubtedly sincere and selfless" efforts on behalf of his clients, and due to his representation of clients of modest means for little or no fee, as well as the lawyer's lack of a prior disciplinary record and cooperation in the disciplinary process, the court ordered a one-year suspension, stayed on the conditions of successfully completing a one-year probation and committing no further misconduct. Id., ¶ 18-19, 21.

{¶ 47} This case differs from *Taylor* in that we conclude that respondent here acted with a selfish motive in lying to the juvenile court and in later making misleading statements in his letter to the unemployment-compensation bureau.

{¶ 48} Respondent relies upon *Dayton Bar Assn. v. Ellison*, 118 Ohio St.3d 128, 2008-Ohio-1808, 886 N.E.2d 836, and *Stark County Bar Assn. v. Ake*, 111 Ohio St.3d 266, 2006-Ohio-5704, 855 N.E.2d 1206, to support his plea for a stayed suspension. In *Ellison*, the lawyer failed to respond to a summary judgment motion, and her client's case was dismissed. Id. at ¶ 8. The lawyer then lied to the client to conceal the fact that the case had been dismissed. Id. at ¶ 9. However, the court imposed only a stayed suspension, noting Ellison's 27-year career primarily representing indigent domestic relations clients in the Dayton area. Id. at ¶ 14. Ellison's misconduct also took place while her own marriage was ending, and Ellison testified that she had trouble dealing with the loss of her client's case. Id. at ¶ 10, 14.

{¶ 49} In *Ake*, 111 Ohio St.3d 266, 2006-Ohio-5704, 855 N.E.2d 1206, a lawyer—who had initially represented himself in his own divorce case—violated several orders of the court because he did not think they would be upheld on

appeal. Id. at ¶ 31. While the court condemned the respondent's decision to disobey the court orders, the other testimony and evidence in the case convinced the court that Ake would not have disobeyed court orders in any other context. These cases differ from the one at issue, in that the respondents there were experiencing severe personal problems that convinced the court that the lawyers, who otherwise enjoyed a good reputation in their communities, were not likely to commit further misconduct. Id. at ¶ 46.

{¶ 50} Here, respondent points to his lack of prior disciplinary violations, the fact that the juvenile court has already sanctioned him, his cooperation in the disciplinary process, and testimonials by his colleagues and former clients attesting to his good reputation as an attorney in the community. Additionally, respondent notes that he has represented needy clients and is a founding member of the Indigent Legal Assistance Fund of West Central Ohio. One of respondent's fellow attorneys in that organization, Camille Harlan, testified that an actual suspension of respondent's license would have a negative impact on the community. A local judge also testified on behalf of respondent, noting his representation of indigent clients and the service he provides the community in doing so.

{¶ 51} In discipline cases, we have considered a lawyer's work for pro bono or low-income clients as a positive factor when determining the appropriate sanction for the lawyer's misconduct. See, e.g., *Smith*, 102 Ohio St.3d 10, 2004-Ohio-1582, 806 N.E.2d 495, ¶ 10, 12 (stayed suspension for lawyer who committed Disciplinary Rule violations, in part because of her work for low-income clients). We note Rohrer's service to indigent clients in felony cases as a positive factor. We wish to emphasize, however, that service to indigent clients, while mitigating, does not immunize a lawyer from discipline for misconduct. And this is particularly true regarding conduct involving dishonesty or false statements to a tribunal.

**{¶ 52}** Having weighed the aggravating and mitigating factors in this case, we conclude that respondent's acting in defiance of a court order, followed by a material misrepresentation to that court in explaining his conduct and other misleading statements to a state agency concerning the same situation, merits an actual suspension from the practice of law. Respondent's testimony at the disciplinary hearing indicates that he thought that the violation of the court's order was justified by his need for discovery ("I felt that * * * would get me discovery and it got me discovery"). A lawyer may not decide which court orders he will obey. See *Stark Cty. Bar Assn. v. Osborne* (1991), 62 Ohio St.3d 77, 79, 578 N.E.2d 455 (Osborne compounded his offense of disobeying the court's restraining order by claiming that he misunderstood it, a claim the court found incredible).

**{¶ 53}** Respondent testified that he lied to the juvenile court at the contempt hearing to avoid being removed from the case, but he later also made misleading statements about the incident to the unemployment-compensation bureau. Respondent's decision to misrepresent his actions to the juvenile court and later to another state agency in the context of a contested unemployment-compensation case in our view strongly militates against a stayed suspension.

*E. Determination*

**{¶ 54}** Respondent's conduct violated five Rules of Professional Conduct and warrants an actual suspension from the practice of law. We therefore decline to adopt the board's recommended sanction and instead order that respondent be suspended from the practice of law for six months. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Robert R. Berger, Assistant Disciplinary Counsel, for relator.

Kegler, Brown, Hill & Ritter, Geoffrey Stern, and Rasheeda Z. Khan, for respondent.

_____