[This opinion has been published in *Ohio Official Reports* at 83 Ohio St.3d 496.]

CINCINNATI BAR ASSOCIATION *v.* WALLACE.

[Cite as *Cincinnati Bar Assn. v. Wallace*, 1998-Ohio-1.]

*Attorneys at law—Misconduct—Public reprimand—Engaging in conduct adversely reflecting on fitness to practice law.*

(No. 98-780—Submitted August 19, 1998—Decided November 4, 1998.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 96-69.

_____

{¶ 1} In a single-count complaint filed on August 12, 1996, relator, Cincinnati Bar Association, charged respondent, Teri A. Wallace of Cincinnati, Ohio, Attorney Registration No. 0059464, with violations of DR 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 7-102(A)(3) (concealing or knowingly failing to disclose that which by law she was required to reveal), 7-102(A)(5) (knowingly making a false statement of law or fact), and 7-102(A)(7) (counseling or assisting her client in conduct she knew to be illegal or fraudulent). In her answer, respondent admitted some facts alleged in the complaint, denied others, and denied any disciplinary violations.

{¶ 2} On January 9, 1998, a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") held a hearing on the matter. The complaint, answer, stipulations, and evidence established the following.

{¶ 3} Respondent was admitted to the Ohio bar in 1992, and practices in Cincinnati. In 1995, respondent undertook to represent William Bolin to defend a post-decree action for contempt for past-due child support initiated by the Hamilton County Child Support Enforcement Agency. Attorney Jenny Namanworth

represented Christine Daniels, Bolin's ex-wife, in relation to the contempt action and related matters.

**{¶ 4}** After learning of the contempt action, and prior to May 26, 1995, Bolin asked respondent whether his ex-wife could place a lien against any real estate he owned in an effort to collect any past-due child support, and respondent advised Bolin that such a lien could be filed. Then, Bolin and his wife, Regina Bolin, insisted that respondent prepare documents to transfer Bolin's one-half interest in real estate at 5219 Hunter Avenue, Norwood, Ohio, to Regina Bolin, who owned the other half-interest. Bolin testified that he wanted to avoid problems in the planned sale of the property, that Regina insisted on the transfer, and because of marital difficulties with Regina, that Bolin wanted the transfer "so I could be done with her, more or less." Respondent advised Bolin against such a transfer, but Bolin insisted.

**{¶ 5}** On or about May 25, 1995, respondent prepared a quitclaim deed for Bolin to transfer his interest in the Hunter Avenue property to Regina Bolin. On May 26, 1995, attorney Namanworth sent interrogatories to respondent in connection with the contempt motion, which respondent received on May 30. The eighth interrogatory stated, "For any real property that you own or in which you have an interest, state the address of each parcel, the owner or owners, and mortgage on the property and the amount, and the present market value of the property."

**{¶ 6}** On May 31, respondent met with Bolin, and Bolin signed the Hunter Avenue quitclaim deed. Respondent then notarized the deed, and the deed was thereafter recorded on June 7, 1995. On May 31, respondent also gave Bolin a copy of the Namanworth interrogatories and asked him to answer the questions. Sometime before July 3, 1995, Bolin returned the interrogatories to respondent with answers except for the eighth question, which he left blank. On July 3, respondent reviewed Bolin's answers in a telephone conversation. When respondent asked Bolin about the eighth question, Bolin said he could answer "none." Then,

respondent wrote in "none." As written and returned, the interrogatories did not contain a signature line nor an attestation provision and were unsworn and unsigned.

{¶ 7} On July 7, 1995, respondent returned the interrogatories to Namanworth with a cover letter. On October 25, 1995, Bolin and Daniels, through counsel, signed an agreed entry resolving the contempt proceeding and reducing the child support arrearage to a sum certain, which Bolin was to pay on or before December 27, 1995. Although Bolin did not pay on time, he later paid the agreed sum in full.

{¶ 8} In early 1996, after an examination of records at the Hamilton County Recorder's Office, Namanworth learned of the quitclaim deed. At the same time, Namanworth learned that in November 10, 1995, the Hunter Avenue property had been sold, a fact of which respondent was unaware. In fact, Bolin used $1,000, which Regina gave him from the net proceeds of $2,000 from the sale of the Hunter Avenue property, to pay towards his obligations under the October 25 agreed entry. Both Namanworth and respondent knew that the Hunter Avenue property was to be sold and anticipated, after the October 25 entry, that sale proceeds would be used to pay on the agreed entry. After Namanworth learned of the earlier quitclaim deed, she contacted relator, who initiated an ensuing ethics investigation of respondent.

{¶ 9} After considering the matter, the panel noted that under "Gov.Bar R. V, Section 6(J), to support a disciplinary sanction misconduct of an attorney must be established by clear and convincing evidence." In the panel's view, relator "has not established by the requisite degree of proof that this otherwise lawful transfer was a fraudulent conveyance within the meaning of the relevant statute. [R.C. 1336.04/1336.05.] Consequently, this conveyance, in which Respondent admittedly participated, cannot form the basis for a violation of either DR 1-102(A)(4) * * * or DR 7-102(A)(7)[.]" Nor did the panel find any violation of DR 7-102(A)(3) or 7-102(A)(5).

{¶ 10} The panel also concluded they were "unable to make factual findings to support the violations charged * * * with respect to the answers to interrogatories." When the eighth interrogatory "was answered, the answer given was technically true." Although respondent advised Bolin to disclose this real-estate transfer, "when he determined not to do so, she considered herself bound by the attorney-client privilege not to disclose it herself."

{¶ 11} Although the panel found that relator did not meet its burden of proof as to the charged violations, the panel found that respondent's "conduct was sufficiently inappropriate, unprofessional, and improper * * * to find a violation of DR 1-102(A)(6)" (engaging in other conduct which adversely reflects on the lawyer's fitness to practice law). The panel also noted that several letters from professional colleagues attested to respondent's integrity and trustworthiness, that she had shown genuine remorse, and that this appeared to be an isolated incident not likely to be repeated. The panel noted that respondent received no personal gain from her conduct, and that while a delay in settlement had occurred, no party suffered any permanent financial harm. The panel recommended that respondent be publicly reprimanded.

{¶ 12} The board adopted the panel's findings of fact, conclusions of law, and recommendation. Subsequently, respondent and relator filed objections to the board's findings and conclusions, and respondent objected to the board's recommendation.

———————————

*Beth Silverman* and *John B. Pinney*, for relator.
*John H. Burlew*, for respondent.

———————————

***Per Curiam.***

{¶ 13} After review, we concur with the findings, conclusions, and recommendation of the board, including finding that respondent's conduct "was sufficiently inappropriate, unprofessional, and improper" to sustain a violation of DR 1-102(A)(6). We reject the objections filed by both relator and by respondent to the board's findings, conclusions, and recommendation.

{¶ 14} We find that relator did not establish by clear and convincing evidence that respondent participated in an act intended to "hinder, delay, or defraud" creditors or otherwise violated R.C. 1336.04. Daniels's enforcement action was for contempt, not to reduce the arrearage to judgment. Also, Bolin had lived in the Hunter Avenue property periodically since 1978, a lifelong connection known to Daniels and his ex-wife, and disclosed in Bolin's answers to the Namanworth interrogatories. Bolin's ownership in that property was also a matter of public record, and the transfer to Regina Bolin was done openly and publicly. Moreover, proceeds from the sale of that real estate were used to pay on the October agreed entry, as the parties contemplated. Finally, Bolin testified that Regina Bolin insisted on this transfer, and that he transferred the property to appease his wife. No evidence was introduced to contradict this claim.

{¶ 15} Nor did relator establish by clear and convincing evidence that respondent acted fraudulently or assisted her client in acting fraudulently by responding "none" to the interrogatory. Before the interrogatory was received, respondent had already prepared a deed to transfer the property, and a month before the interrogatory was returned, the property had been transferred. By analogy, the United States Supreme Court has found that the federal perjury statute does not reach a witness's literally true, but unresponsive answer, even if the witness intends to mislead the questioner by his answer. See *Bronston v. United States* (1973), 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568.

{¶ 16} Contrary to respondent's claims, the board accorded her due process and she had fair notice that her professional conduct in representing Bolin, by

preparing a quitclaim deed and assisting him in answering the interrogatories, had been challenged. See *In re Ruffalo* (1968), 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117; *Toledo Bar Assn. v. Wood* (1987), 32 Ohio St.3d 166, 512 N.E.2d 671. The fact that she was found to have violated DR 1-102(A)(6), in essence an included offense to the charged violations of DR 1-102(A)(4), 7-102(A)(3), and DR 7-102(A)(5), was of no consequence.

{¶ 17} On the basis of clear and convincing evidence, we find respondent's conduct to be improper and unprofessional, which adversely reflects on her fitness to practice law, a violation of DR 1-102(A)(6). "*[A]ll* attorneys who practice law in this state are required to maintain the utmost degree of integrity, honesty, and competence." (Emphasis *sic*.) *Disciplinary Counsel v. Columbro* (1993), 66 Ohio St.3d 195, 197, 611 N.E.2d 302, 304. Respondent knew that her conduct was improper because she repeatedly warned Bolin, who insisted on the transfer, that the transfer was "stupid." At one point respondent asserted that she told Bolin this deed "was a fraudulent conveyance," but she later denied advising Bolin in those terms. Also, respondent's participation in returning the answered interrogatory, marked "none," shows a serious lack of the professionalism expected of those licensed to practice law. Abuses of an attorney's obligations during the discovery process will not be tolerated. See *Cincinnati Bar Assn. v. Marsick* (1998), 81 Ohio St.3d 551, 692 N.E.2d 991. Although respondent could not disclose client confidences, she could have disclosed the publicly recorded deed to opposing counsel, after advising her client of her intention to do so. For her misconduct in violation of DR 1-102(A)(6), respondent is hereby publicly reprimanded. Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

———————————