TOLEDO BAR ASSOCIATION *v*. RUST.

[Cite as *Toledo Bar Assn. v. Rust*, 124 Ohio St.3d 305, 2010-Ohio-170.]

*Attorneys — Misconduct — Complaint dismissed when respondent had arguably viable legal support for his actions.*

(No. 2009-1171 — Submitted September 29, 2009 — Decided January 28, 2010.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 08-026.

_____

**Per Curiam.**

{¶ 1} Respondent, John G. Rust of Toledo, Ohio, Attorney Registration No. 0000098, was admitted to the practice of law in Ohio in 1948. The Board of Commissioners on Grievances and Discipline recommends that we suspend respondent's license to practice for six months, but stay the suspension on conditions, including a two-year monitored probation. The recommendation is based on findings that respondent agreed to file a wrongful-death action at the behest of the decedent's heir, but then brought the suit on behalf of the administrator of the decedent's estate, the proper party-plaintiff, without obtaining the administrator's authority for the suit.

{¶ 2} The board found a single violation of Prof.Cond.R. 1.16(a)(1), which requires a lawyer to decline or terminate representation if "the representation will result in the violation of the Ohio Rules of Professional Conduct or other law." Respondent objects to this finding, citing precedent that he insists allows a beneficiary to file a wrongful-death claim in the name of the administrator when the administrator has refused to pursue the action. Without deciding the viability of his legal strategy, we find that respondent initiated the wrongful-death action in good faith and that he had an arguable basis in law and

fact that was not frivolous for filing the claim. Because lawyers may advance such claims in attempting to extend, modify, or reverse existing law, we hold that respondent committed no ethical impropriety and dismiss the complaint against him.

{¶ 3} Relator, Toledo Bar Association, charged respondent in a single count with multiple violations of the Rules of Professional Conduct, including Prof.Cond.R. 1.16(a)(1). A panel of three board members heard the case, found the Prof.Cond.R. 1.16(a)(1) violation, and recommended both the dismissal of all other charges and a one-year suspension of respondent's license, with the suspension stayed on conditions of (1) participation in the Ohio Lawyers Assistance Program ("OLAP"), (2) completion of a two-year probation, and (3) no further misconduct. The board adopted the panel's finding of misconduct, but recommended a six-month suspension, stayed on the listed conditions.

### Alleged Misconduct

*Facts*

{¶ 4} In early 2007, Duane Tillimon[1] consulted respondent about bringing a wrongful-death action to recover for his mother's death on January 20, 2005. Tillimon, the sole beneficiary of his mother's estate, suspected that her former guardian and the nursing home where she died contributed to the cause of her death.

{¶ 5} Tillimon had already filed one wrongful-death complaint against the guardian and the nursing home while being represented by another lawyer. The previous lawyer filed the complaint in mid-January 2006, naming the

---

1. {¶ a} Later that year, the Lucas County Court of Common Pleas declared Tillimon a vexatious litigator. Under R.C. 2323.52(A)(3), "vexatious litigator" means:

{¶ b} "[A]ny person who has habitually, persistently, and without reasonable grounds engaged in vexatious conduct in a civil action or actions, whether in the court of claims or in a court of appeals, court of common pleas, municipal court, or county court, whether the person or another person instituted the civil action or actions, and whether the vexatious conduct was against the same party or against different parties in the civil action or actions."

administrator initially appointed to oversee the decedent's estate as plaintiff. Later, when that administrator was replaced by a successor due to a conflict, the complaint was amended to name the successor administrator as the plaintiff. But then the guardian's counsel discovered that the successor administrator had not authorized the filing of the wrongful-death suit. The guardian's counsel obtained an affidavit from the administrator disavowing the wrongful-death claim and moved to dismiss, asserting that Tillimon had no authority to sue. Tillimon's previous lawyer responded in April 2006 by voluntarily dismissing the complaint without prejudice, thereby allowing the action to be refiled later.

{¶ 6} When Tillimon retained respondent, the statute of limitations on the wrongful-death action was within a week or ten days of expiring. Respondent concluded from the administrator's affidavit that the administrator had not and would not authorize the pursuit of a wrongful-death claim against the former guardian and nursing home. Respondent nevertheless refiled the case in late March 2007 in the Lucas County Common Pleas Court. To do so, he used a slightly modified version of the complaint that Tillimon's former counsel had filed, still naming the successor administrator as plaintiff.

{¶ 7} The guardian, who had refused service of the complaint, monitored the proceedings from the common pleas court's online docket. In early April 2007, the guardian's counsel obtained a second affidavit from the estate's administrator indicating that the administrator had not authorized a wrongful-death action on behalf of the estate. At the same time, the administrator wrote to respondent and demanded that the suit be dismissed.

{¶ 8} Respondent responded by asking the common pleas court to substitute Tillimon as plaintiff in the case, which the court did. In his motion, respondent alleged that the decedent's guardian had wrongfully failed to authorize surgery for the decedent; that respondent's client, the decedent's sole heir, wanted to pursue a wrongful-death action against the guardian and others; and that the

administrator of the decedent's estate had indicated that he was not interested in pursuing the action. Respondent obtained an affidavit from a physician who had treated the decedent that supported respondent's theory as to her death.

**{¶ 9}** The guardian then moved for reconsideration of the substitution order. Respondent, in turn, asked for a stay of the common pleas court proceedings to obtain an order from the probate court substituting his client as administrator of the estate. In July 2007, the common pleas court vacated its substitution order and reinstated the estate administrator as plaintiff, holding that the probate court had exclusive jurisdiction to replace an estate fiduciary.

**{¶ 10}** The guardian next filed a memorandum opposing the motion to stay and moved for dismissal, arguing again that respondent lacked authority to sue. The court denied the stay. That August, respondent filed a notice, advising the court:

**{¶ 11}** "Son and sole heir Duane J. Tillmon, by his counsel, advising court of our 'followup' to move probate court to act on Mr. Tillmon's motion for appointment as executor or special administrator, promptly."

**{¶ 12}** The common pleas court dismissed the wrongful-death action several days later without addressing the notice.

*Analysis*

**{¶ 13}** The board found respondent in violation of Prof.Cond.R. 1.16(a)(1) because he filed a wrongful-death action that named as plaintiff the administrator of the decedent's estate, even though respondent knew that the administrator did not want to pursue the action. In objecting to the board's finding, respondent claims that he had to file the action as he did because (1) his client, the decedent's only heir, wanted to file the action, but the administrator, the proper party-plaintiff, opposed the action, and (2) the statute of limitations was about to expire. Respondent insists that his filing on behalf of the estate administrator was permissible under *Douglas v. Daniels Bros. Coal Co.* (1939),

4

135 Ohio St. 641, 15 O.O. 12, 22 N.E. 195; *Burwell v. Maynard* (1970), 21 Ohio St.2d 108, 50 O.O.2d 268, 255 N.E.2d 628; and R.C. 2113.18.   Because this precedent and its progeny at least arguably permitted respondent to file the action to avoid the statute of limitations for wrongful-death actions and to then obtain his client's appointment under the statute as the administrator of his mother's estate, we sustain the objection and find no misconduct.

{¶ 14} R.C.   2113.18   authorizes   a   probate   court   to   remove   the administrator of a decedent's estate under circumstances that respondent claims are present here—when the administrator refuses to bring a wrongful-death action and a prima-facie case for wrongful-death exists.   That statute provides:

{¶ 15} "(B) The probate court may remove any executor or administrator upon motion of the surviving spouse, children, or other next of kin of the deceased person whose estate is administered by the executor or administrator if both of the following apply:

{¶ 16} "(1) The executor or administrator refuses to bring an action for wrongful death in the name of the deceased person;

{¶ 17} "(2) The court determines that a prima-facie case for a wrongful death action can be made from the information available to the executor or administrator."

{¶ 18} In   authorizing   wrongful-death   actions,   R.C.   2125.02(A)(1) provides that in general:

{¶ 19} "[A] civil action for wrongful death shall be brought *in the name* of the personal representative of the decedent for the exclusive benefit of the surviving spouse, the children, and the parents of the decedent, all of whom are rebuttably presumed to have suffered damages by reason of the wrongful death, and for the exclusive benefit of the other next of kin of the decedent."   (Emphasis added.)

**{¶ 20}** Respondent's defense raises the question whether this statute (1) allows only the personal representative of the estate to file the wrongful-death action or (2) allows, as an initial matter, a beneficiary or other party in interest to initiate the proceeding in the name of the personal representative. Over the years, courts have often followed the latter interpretation and acknowledged that it is not necessarily fatal to the wrongful-death claim for a party other than the fiduciary appointed by the probate court to file the action. Respondent relies on two of these cases—*Douglas v. Daniels Bros. Coal Co.,* 135 Ohio St. 641, 15 O.O. 12, 22 N.E. 195, and *Burwell v. Maynard*, 21 Ohio St.2d 108, 50 O.O.2d 268, 255 N.E.2d 628—both of which offer the same explanation:

**{¶ 21}** " 'The requirement of the wrongful death statute that the prosecution of the action be in the name of the personal representative is no part of the cause of action itself, but relates merely to the right of action or remedy. That requirement was obviously intended for the benefit and protection of the surviving spouse, children and next of kin of a decedent, the real parties in interest. The personal representative is only a nominal party. *Wolf, Adm'r, v. Lake Erie & W. Ry. Co.*, 55 Ohio St. 517, 45 N.E. 708, 36 L.R.A. 812. Nor does the statute require that the personal representative shall bring the action *(Wolf, Adm'r., v. Lake Erie & W. Ry. Co., supra),* but merely provides that the action, if brought, shall be brought in the name of the personal representative. The only concern defendants have is that the action be brought in the name of the party authorized so that they may not again be haled into court to answer for the same wrong.' " *Burwell* at 110, 50 O.O.2d 268, 255 N.E.2d 628, quoting *Douglas* at 647, 15 O.O. 12, 22 N.E.2d 195.

**{¶ 22}** *Douglas* is most specifically on point. In that case, a widow instituted an action alleging her husband's wrongful death. *Douglas*, 135 Ohio St. at 641, 15 O.O. 12, 22 N.E.2d 195. Though the widow had not been appointed administrator, she filed the action as the decedent's personal representative under

the mistaken impression that she had been appointed. Id. at 645. Thus, like respondent, the widow filed the case without the authority of a validly appointed personal representative. She discovered her error after expiration of the applicable statute-of-limitations period and amended her petition to show her later appointment as administrator. Id. Allowing the amendment to relate back and preserve the claim, the court held:

{¶ 23} "Where a widow institutes an action, as administratrix, for damages for the wrongful death of her husband, under the mistaken belief that she had been duly appointed and had qualified as such, thereafter discovers her error and amends her petition so as to show that she was appointed administratrix after the expiration of the statute of limitation applicable to such action, the amended petition will relate back to the date of the filing of the petition, and the action will be deemed commenced within the time limited by statute." Id. at paragraph one of the syllabus.

{¶ 24} Respondent argues that this authority allowed him to bring a wrongful-death action by filing a complaint naming the administrator as plaintiff. In fact, he took this precedent so literally that he represented himself to be the plaintiff's lawyer on the pleading. The board found respondent's argument "certainly worthy of consideration" but nevertheless found that the filing of a wrongful-death action required approval of the administrator or executor of the decedent's estate.

{¶ 25} Precedent following *Douglas* and *Burwell*, however, suggests otherwise. In *Kyes v. Pennsylvania RR. Co.* (1952), 158 Ohio St. 362, 363, 49 O.O. 239, 109 N.E.2d 503, for example, a trial court permitted the substitution of the administrator, who lived in Pennsylvania, as the named plaintiff after the ancillary administrator failed to qualify, even though the two-year statute of limitations for a wrongful-death suit had passed. Finding no error in the trial

court's refusal to dismiss the case as time-barred, this court quoted the first syllabus paragraph in *Douglas* and then noted:

**{¶ 26}** "In the opinions in the *Wolf* and *Douglas cases*, *supra*, it is observed that under the provisions of the statute it is not even necessary that the representative *bring* the action. The requirement is merely that the action be brought in his *name*." (Emphasis sic.) *Kyes*, 158 Ohio St. at 365, 49 O.O. 239, 109 N.E.2d 503.

**{¶ 27}** More recently, the rule was discussed in *In re Estate of Ross* (1989), 65 Ohio App.3d 395, 400, 583 N.E.2d 1379:

**{¶ 28}** "R.C. 2125.02(A) provides that a wrongful death action 'shall' be brought in the name of the deceased's personal representative. This and similar language has been interpreted to mean that only the personal representative has the legal capacity to sue under this statutory cause of action. *Moss v. Hirzel Canning Co.* (1955), 100 Ohio App. 509, 60 O.O. 397, 137 N.E.2d 440. If the action is brought by the beneficiaries, it must be dismissed or the correct party substituted. *Sabol v. Pekoc* (1947), 148 Ohio St. 545, 36 O.O. 182, 76 N.E.2d 84. Usually, the personal representative is the executor or administrator of the estate.

**{¶ 29}** "Yet it is equally settled that the representative is a nominal party, unless he is also a beneficiary, and that the beneficiaries are the real parties in interest. *Kyes v. Pennsylvania Rd. Co.* (1952), 158 Ohio St. 362, 49 O.O. 239, 109 N.E.2d 503; *Burwell v. Maynard* (1970), 21 Ohio St.2d 108, 50 O.O.2d 268, 255 N.E.2d 628. Thus, it has been stated that the statute is satisfied if the action is merely brought in the representative's name, *Kyes, supra,* and that the name requirement was designed to avoid multiple actions for the same wrong. *Burwell, supra.*"

**{¶ 30}** This court again considered who may file a wrongful-death action under R.C. Chapter 2125 in *Ramsey v. Neiman* (1994), 69 Ohio St.3d 508, 634 N.E.2d 211. There, a decedent's father who had not been appointed

administrator, executor, or other fiduciary of his daughter's estate argued that he qualified as the decedent's personal representative and had authority to sue for his daughter's wrongful death. Id. at 511. We first observed that R.C. 2125.02(A)(1) has "remained virtually unchanged since the date the statute was originally enacted in 1851" and that it was modeled after Lord Campbell's Act, passed by Parliament in 1846. Id. at 509-510. In creating a cause of action for wrongful death, Lord Campbell's Act authorized executors and administrators to bring the new action, providing:

{¶ 31} " 'And be it enacted, That every such Action shall be for the Benefit of the Wife, Husband, Parent, and Child of the Person whose Death shall have been so caused, *and shall be brought by and in the Name of the Executor or Administrator of the Person deceased * * *.*' (Emphasis added.) 9 & 10 Vict. Ch. 93, 86 Eng. Stat. at Large 531 * * * ." *Ramsey*, 69 Ohio St.3d at 510, 634 N.E.2d 211, quoting 86 Eng.Stat. at Large 531.

{¶ 32} *Ramsey* thus held that the reference in R.C. 2125.02(A)(1) to a "personal representative" required "an executor or administrator, *i.e.,* an individual appointed by a court, to bring the cause of action." Id. at 510. This conclusion is consistent with the language in Lord Campbell's Act requiring that the wrongful-death action be brought *by and in the name* of the executor or administrator. But according to the concurring opinion, joined by three other justices, the lead opinion incorrectly construed the statute to "mandate[] that the personal representative be appointed before he or she can enter the courthouse to file a wrongful death complaint." Id. at 513. As the opinion points out, this requirement is not specified anywhere in the statute:

{¶ 33} "The language in R.C. 2125.02(A)(2) and 2125.02(C) indicates that the personal representative must be court-appointed after the complaint has been filed, but before any judgment is entered or any settlement is reached.

**{¶ 34}** "Summary judgment would provide the appropriate mechanism to screen out those plaintiffs who have not received court appointment after filing their complaints. In the present case, the plaintiff was not appointed as the decedents' personal representative after he filed his complaint." Id. at 514 (Pfeifer, J., concurring).

**{¶ 35}** The *Ramsey* court distinguished *Douglas* and *Kyes* on the bases that the father in *Ramsey* had not been appointed administrator and the record did not show "any attempt on his part to become appointed." 69 Ohio St.3d at 513, 634 N.E.2d 211. But here, respondent pursued the wrongful-death claim in the name of the proper party. The common pleas court initially granted respondent's motion to substitute his client for the administrator. And when the common pleas court reconsidered its authority to remove a probate-court-appointed fiduciary as the named party and reinstated the administrator as the plaintiff, respondent gave notice that he intended to petition the probate court to have his client appointed as a special administrator.[2] He did request that his client be named a special administrator, but the probate court denied the request, and as of the panel hearing, that decision was on appeal.

**{¶ 36}** At least one court has even advocated filing a wrongful-death action in the name of the personal representative under the circumstances facing respondent and his client. In *Gottke v. Diebold, Inc.* (Aug. 9, 1990), Licking App. No. CA-3484, 1990 WL 120801, *1, a daughter filed suit against two defendants, alleging the wrongful death of her mother and that she was the personal representative of her mother's estate. As in respondent's case, the probate-court-appointed executor opposed the claim. Id. The court concluded:

---

2. The guardian's attorney testified that even if respondent's client had been appointed special administrator, he still would not have had the authority to prosecute the wrongful-death action. This witness admitted, however, that if the probate court had substituted the client as the "regular" administrator, and the common pleas court had not dismissed the action, the appointment would have related back to and saved the complaint.

{¶ 37} "[A]n action for wrongful death must be brought in the name of the personal representative of the decedent; Civ.R. 17 [precluding dismissal of actions not filed in the name of the real party in interest without allowing reasonable time after objection to permit ratification by or joinder or substitution of the real party] may not be used to, in effect, extend the applicable statute of limitations; and the doctrine of relation back does not apply where the plaintiff misrepresents his/her capacity, and fails to procure appointment within the time prescribed by the appropriate statute of limitations, *or file 'in the name of' the personal representative."* (Emphasis added.) Id. at *3.

{¶ 38} The court of appeals in *Gottke* affirmed the dismissal of the daughter's action as to both defendants because she filed the complaint in her own name and *not* in the name of the personal representative. Citing *Kyes*, *Wolf,* and *Douglas*, the court faulted the daughter for not taking the very action that respondent took to preserve his client's claim:

{¶ 39} "Appellee correctly argues that rather than mislead the defendants and the court [the daughter] could have brought the action in the name of the actual fiduciary. That would have accomplished the statutory intent of focusing the response of the court and the adverse parties upon the probated estate.

{¶ 40} "Under the provisions of the statute it is not even necessary that the representative bring the action. The requirement is merely that the action be brought in his name." Id. at *4.

## Conclusion

{¶ 41} In his zeal to file a complaint "in the name" of this decedent's personal representative, respondent did initially represent himself to be the plaintiff-administrator's lawyer on the pleading. This discrepancy, however, is not the focus of either relator's complaint or the board's report. Moreover, little harm came of his mistake, inasmuch as the client notified the decedent's guardian

the day after the suit was filed that he had retained respondent, and respondent properly identified himself as his client's lawyer in later filings.

{¶ 42} In any event, we need not decide here whether respondent correctly interpreted precedent. As stated in Prof.Cond.R. 3.1, lawyers are permitted to advance claims and defenses for which "there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law." And under DR 7-102(A)(2), the predecessor to Prof.Cond.R. 3.1, a lawyer could not "[k]nowingly advance a claim or defense that is unwarranted under existing law"; however, the lawyer could "advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law."

{¶ 43} The comment to Prof.Cond.R. 3.1 embellishes these standards:

{¶ 44} "[1] The advocate has a duty to use legal procedure for the fullest benefit of the client's cause, but also a duty not to abuse legal procedure. The law, both procedural and substantive, establishes the limits within which an advocate may proceed. However, the law is not always clear and never is static. Accordingly, in determining the proper scope of advocacy, account must be taken of the law's ambiguities and potential for change.

{¶ 45} "[2] The filing of an action or defense or similar action taken for a client is not frivolous merely because the facts have not first been fully substantiated or because the lawyer expects to develop vital evidence only by discovery. What is required of lawyers, however, is that they inform themselves about the facts of their clients' cases and the applicable law and determine that they can make good faith arguments in support of their clients' positions. Such action is not frivolous even though the lawyer believes that the client's position ultimately will not prevail. The action is frivolous, however, if the lawyer is unable either to make a good faith argument on the merits of the action taken or to

12

support the action taken by a good faith argument for an extension, modification, or reversal of existing law."

{¶ 46} Respondent's strategy may have been flawed, but the fact that he had some arguably viable legal support for his actions is enough to avoid disciplinary sanction. We therefore find no violation of the ethical standards incumbent upon Ohio lawyers. The complaint against respondent is dismissed.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and CUPP, JJ., concur.

LANZINGER, J., dissents and would impose a stayed six-month suspension.

_____

Jonathan B. Cherry, Bar Counsel, Yvonne Tertel, and Paul D. Giha, for relator.

Kerger & Hartman, L.L.C., and Richard M. Kerger, for respondent.

_____