DISCIPLINARY COUNSEL *v.* STAFFORD.

[Cite as *Disciplinary Counsel v. Stafford,*

128 Ohio St.3d 446, 2011-Ohio-1484.]

*Attorney misconduct, including engaging in conduct prejudicial to the administration of justice — Eighteen-month suspension, with six months stayed.*

(No. 2010-1601 — Submitted January 18, 2011 — Decided April 5, 2011.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 08-081.

_____

LANZINGER, J.

{¶ 1} Respondent, Vincent Stafford of Cleveland, Ohio, Attorney Registration No. 0059846, was admitted to the practice of law in Ohio in 1992 and was publicly reprimanded in 2000, *Cuyahoga Cty. Bar Assn. v. Gonzalez* (2000), 89 Ohio St.3d 470, 733 N.E.2d 587.

{¶ 2} In a five count complaint, relator, Disciplinary Counsel, charged respondent with numerous disciplinary violations arising from his conduct while representing clients in four domestic relations cases and one legal malpractice case. A panel of the Board of Commissioners on Grievances and Discipline, after having heard testimony for 22 days and having reviewed the evidence, made findings of fact and conclusions of law. As to Count I, the panel found that respondent violated DR 1-102(A)(5) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice) and 1-102(A)(6) (a lawyer shall not engage in conduct that adversely reflects upon his fitness to practice law) and Prof.Cond.R. 3.4(a) (a lawyer shall not unlawfully obstruct another party's access to evidence), 3.4(c) (a lawyer shall not knowingly disobey an obligation under the

rules of a tribunal), 8.4(d) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice), and 8.4(h) (a lawyer shall not engage in conduct that adversely reflects on the lawyer's fitness to practice law).[1]

{¶ 3} The panel also concluded that respondent had violated DR 1-102(A)(5) and 1-102(A)(6) as alleged in Count II. The panel recommended dismissal of additional violations charged in Count I and Count II and recommended dismissal of Counts III, IV, and V in their entirety. The panel recommended that this court suspend respondent's license to practice law in Ohio for 18 months, with 12 months of the suspension stayed. The board adopted the panel's findings and recommended sanction.

{¶ 4} Both respondent and relator filed objections to the board's report. For the reasons that follow, however, we overrule those objections, accept the board's findings of fact and misconduct, but modify the recommended sanction to stay only six months of an 18-month suspension. We will detail the findings of fact as to Counts I and II only, as those are the counts related to the sanction imposed.

## I. Misconduct

### A. Count I: Obstructing Discovery

{¶ 5} During an 18-month divorce action between a husband and wife, respondent represented the wife. Respondent filed the divorce action on April 24, 2006, and the case was assigned to Cuyahoga County Domestic Relations Judge Timothy Flanagan. Four attorneys represented the husband throughout the course of the divorce action: Herbert Palkovitz, who represented the husband from May until early September 2006; Paul Kriwinsky, who assisted with the representation

---

1. On February 1, 2007, the Rules of Professional Conduct became effective, replacing the Code of Professional Responsibility in Ohio. Respondent's conduct before February 1, 2007, is governed by the Code of Professional Responsibility, and conduct after that date is governed by the Rules of Professional Conduct.

during 2006 and 2007; Eric Laubacher, whose representation lasted from early September 2006 until January 2007; and Russell Kubyn, who represented the husband from January 2007 until the divorce was final in November 2007.

{¶ 6} Respondent's compliance with discovery became an issue during the time that Kriwinsky, Laubacher, and Kubyn represented the husband. At a pretrial conference held on October 30, 2006, the court directed respondent to respond to discovery requests within 11 days. On November 17, 2006, on behalf of his client, Laubacher filed a motion to compel responses to the interrogatories and requests for production of documents. Respondent did not file a response. A judgment entry was issued granting the motion to compel and requiring respondent to provide discovery responses by December 1, 2006.

{¶ 7} Laubacher testified that as of December 7, 2006, he still had not received discovery responses from respondent. On that day, Laubacher sent a letter to the judge alerting him to this fact. Respondent telephoned Laubacher upon receiving a copy of the letter and assured him that discovery responses would be forthcoming. Laubacher withdrew as counsel for the husband in January 2007 and testified that as of that date he still had not received discovery.

{¶ 8} Kubyn took over representation of the husband in January and continued to represent him until the divorce decree was entered. At a pretrial conference in March 2007, respondent gave Kubyn and Kriwinsky a number of documents. They, like Laubacher before them, complained that they had not received some of the documents requested and that the interrogatories had not been answered. Accordingly, they sent a letter to respondent on March 26, 2007. Kubyn never received a response.

{¶ 9} The divorce trial took place during the fall of 2007. One of the contested trial issues was whether the husband was required to pay a portion of the wife's attorney fees. In an attempt to show that respondent's fee bills were exaggerated, Kubyn pressed the issue of his discovery noncompliance.

Respondent's client testified that she had indeed completed interrogatory answers, and upon the judge's request, respondent searched through his file boxes and produced her original, handwritten interrogatory responses. The responses were neither complete nor verified, and contained no objections by respondent.

{¶ 10} Respondent testified during the trial with regard to the attorney fees he charged his client and was cross-examined by Kubyn. The following, consisting of a mere portion of the transcript, shows the flavor of the exchange that took place:

{¶ 11} "Q: Now, do you recall when this finite period of time was when Mr. Laubacher was on the case?

{¶ 12} "A: No. Perhaps, if you get a document you would have that period of time.

{¶ 13} "Q: You just don't recollect?

{¶ 14} "A: I generally don't take notice of when people come and get off of cases.

{¶ 15} "Q: Would he have been on the case —

{¶ 16} "A: I have no idea.

{¶ 17} "Q: I didn't finish my question.

{¶ 18} "A: I told you I didn't know when he was on or off the case. I know in October of '06, he was on the case. When he got on or off, I have no idea.

{¶ 19} "Q: There was a Motion to Compel filed by Mr. Laubacher; wasn't there?

{¶ 20} "A: I don't know. Appears so.

{¶ 21} "Q: When?

{¶ 22} "A: July — November 17th, 2006.

{¶ 23} "Q: Was that filed after you gave him those documents?

{¶ 24} "A: Again, I told you I didn't know what date he got the documents.

{¶ 25} "Q: If you had given him the documents and he would have filed that, you would have filed some sort of response.

{¶ 26} "A: No, that's absolutely not correct.

{¶ 27} "Q: Why not?

{¶ 28} "A: My client had already provided the interrogatories and responses to the Request for Production of Documents to predecessor counsel. There was no reason to have a duplicative attempt at discovery by Mr. Laubacher.

{¶ 29} "Q: Help me out here, Mr. Stafford.

{¶ 30} "A: Sorry. I'm not here to help you out; I'm here to answer your questions.

{¶ 31} "Q: The answer will help me out. You indicated you provided discovery to Mr. Laubacher?

{¶ 32} "A: Yes.

{¶ 33} "Q: We just noted that a Motion to Compel Discovery was filed by Mr. Laubacher on November 17, 2006, correct?

{¶ 34} "A: Yes.

{¶ 35} "Q: On November 17, 2006 —

{¶ 36} "A: That's when he filed the motion.

{¶ 37} "Q: You are indicating that even though you have been forced to —

{¶ 38} "A: I'm sorry? Forced? I don't think I'm forced to do anything, sir.

{¶ 39} "Q: Even though you were compelled —

{¶ 40} "A: Sir, I'm not a party.

{¶ 41} "Q: Let me finish.

{¶ 42} "A: You ask a proper question.

{¶ 43} "MR. STAFFORD: I'm not a litigant to this case, Your Honor.

**{¶ 44}** "THE COURT: Are you objecting?

**{¶ 45}** "MR. STAFFORD: Objection.

**{¶ 46}** "THE COURT: Rephrase it, counsel.

**{¶ 47}** "Q: Even though you were served with that motion, you didn't do anything to bring it to counsel's or the Court's attention that, perhaps, this is some sort of frivolous motion?

**{¶ 48}** "A: We had already responded to the discovery from Mr. Palkovitz.

**{¶ 49}** "Q: So the answer is you took no action?

**{¶ 50}** "A: Could I finish my response?

**{¶ 51}** "Q: I thought you were finished."

**{¶ 52}** The board noted that this testimony in response to Kubyn's attempt to establish exactly which documents respondent had produced to Laubacher and when they were produced was significant because it clearly demonstrated that he was intentionally attempting to "obfuscate and hinder the truth-seeking process." The board determined that respondent had "erected a smokescreen so dense that his exchange with Kubyn at times resembled a replay of 'Who's on First?' rather than a search for the truth." The board found his conduct "totally unacceptable for an officer of the court."

**{¶ 53}** Based upon these factual findings, the board concluded that respondent's conduct "showed contempt for the discovery process" and violated DR 1-102(A)(5) and 1-102(A)(6) and Prof.Cond.R. 3.4(a), 3.4(c), 8.4(d), and 8.4(h). The board, however, recommends that we dismiss the alleged violation of Prof.Cond.R. 4.1 (in the course of representing a client, a lawyer shall not knowingly make a false statement of material fact or law to a third person), 8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or

misrepresentation), and 3.3(a)(1) (a lawyer shall not knowingly make a false statement of fact or law to a tribunal).[2]

*B. Objections to Count I*

**{¶ 54}** Respondent objects to the board's findings of misconduct, arguing that relator failed to meet its burden of proving by clear and convincing evidence that his conduct violated the Code of Professional Responsibility and the Rules of Professional Conduct. Throughout this disciplinary proceeding, respondent has maintained that the panel and the board simply disagree with his style of practice and that this disagreement is irrelevant as to whether relator established by clear and convincing evidence that he committed disciplinary violations. Relator, on the other hand, objects to the board's recommendation that we dismiss the additional violations in Count I, arguing that it had presented clear and convincing evidence to find that respondent had committed those additional violations.

**{¶ 55}** We do not agree with either party. The clear-and-convincing-evidence standard is actually an intermediate standard—"more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases." *Cross v. Ledford* (1954), 161 Ohio St. 469, 477, 53 O.O. 361, 120 N.E.2d 118. "Clear and convincing evidence is evidence which shows that the truth of the facts asserted is highly probable." *In re B.D.-Y.* (2008), 286 Kan. 686, 187 P.3d 594. In this case, both sides presented evidence to the panel for 22 days, and the evidence was reviewed by the full board. We defer to the board's assessment of the truth and weight of the evidence with regard to the additional violations alleged in Count I, and in accordance with the board's recommendation, we dismiss those charges.

**{¶ 56}** We have repeatedly held that the practice of law is "a learned profession grounded on integrity, respectability, and candor." See, e.g.,

---

2. The board dismissed the alleged violation of Prof.Cond.R. 3.4(d) because the conduct occurred before the effective date of the rule.

*Disciplinary Counsel v. Claflin,* 107 Ohio St. 3d 31, 2005-Ohio-5827, 836 N.E.2d 564, ¶ 14. It is clear that these attributes were missing from respondent's conduct: How difficult can it be to show that you sent discovery responses to opposing counsel? For more than a year, respondent confounded three attorneys in their search for discovery documents. His evasive and obstreperous conduct alone is clear and convincing evidence that he violated the rules of professional conduct. Discovery is a critical part of the litigation process, and it often takes up a majority of the time that lawyers spend in litigating a case. " 'Our system of discovery was designed to increase the likelihood that justice will be served in each case, not to promote principles of gamesmanship and deception in which the person who hides the ball most effectively wins the case.' " *Cincinnati Bar Assn. v. Marsick* (1998), 81 Ohio St.3d 551, 553, 692 N.E.2d 991, quoting *Abrahamsen v. Trans-State Express, Inc.* (C.A.6, 1996), 92 F.3d 425, 428-429. Respondent's lack of diligence in responding to requests for discovery is the equivalent of obstructing discovery. Therefore, as determined by the board, there is clear and convincing evidence that respondent engaged in evasive conduct that was prejudicial to the administration of justice.

{¶ 57} Having determined that respondent's and relator's objections to the board's findings with respect to Count I are meritless, we adopt the board's findings of fact and misconduct with respect to this count.

### C. Count II: Lack of Candor

{¶ 58} Count II relates to a legal malpractice action that respondent prosecuted on behalf of his client against his client's former attorney. The complaint alleged that the lawyer's representation had fallen below the standard of care while he was pursuing a negligence action arising out of an automobile accident. The issues surrounding this count again relate to a discovery dispute.

{¶ 59} The dispute arose in late August 2004, after the first set of interrogatories had been answered by respondent's client. In a response to a

question about damages, respondent's client had stated that the damages he was seeking in the malpractice case would include "all costs associated with the various matters of litigation including the Probate proceedings" and that "[t]he associated costs of litigation have not been finalized. All final damages will be provided." At a deposition several weeks later, the opposing counsel representing the attorney posed questions to respondent's client relating to expenses and attorney fees that respondent's client had incurred. Respondent objected to the questions on the basis of privilege. The presiding judge rejected respondent's argument.

{¶ 60} Less than a month later, respondent's client was served with a second set of requests for production of documents, asking for "[a]ny and all documents demonstrating and/or evidencing any and all expenses you have incurred or claim to have incurred, including, but not limited to, attorney fee bills from * * * Stafford & Stafford Co., L.P.A. * * * in connection with [specified cases]." Respondent maintained that the documents were not discoverable, because they were protected by attorney-client privilege. Opposing counsel for the attorney then moved to compel respondent's client to respond to discovery, stating, "Defendants' Second Request for Production simply asks the Plaintiff to produce the documents that confirm the sort of expenses [the plaintiff] has already testified to" and that "the Court has already ruled [are] not privileged." Respondent then filed a motion for a protective order.

{¶ 61} A month later, opposing counsel served a third set of requests for production of documents, which respondent responded to with another motion for a protective order. In an entry dated December 8, 2004, the judge granted the motion to compel and denied respondent's motions for protective order, but invited respondent's client to comply with the discovery requests by submitting the requested documents to the court for an in camera inspection. Respondent instead filed a notice of appeal to the Eighth District Court of Appeals. The court

of appeals affirmed the trial court, rejecting respondent's argument that "all documents relating to fee agreements, billing, and/or attorney fees paid" are privileged. *Muehrcke v. Housel,* 8th Dist. Nos. 85643 and 85644, 2005-Ohio-5440, ¶ 1 and 17. The court of appeals also pointed out that respondent had made a "blanket assertion of privilege without so much as requesting an in camera inspection." Id. at ¶ 20. A request for discretionary review by this court was denied. 108 Ohio St.3d 1489, 2006-Ohio-962, 843 N.E.2d 795.

{¶ 62} Once appeals were exhausted, opposing counsel again asked for the production of all documents previously requested, which the courts had now ordered respondent's client to produce, including the fee bills from respondent's firm. Eventually, on May 17, 2006, respondent produced documents, but the documents produced did not include any attorney-fee bills, prompting opposing counsel to renew the attorney's motion to dismiss and for other sanctions.

{¶ 63} In May 2006, respondent disclosed that no fee bills had ever been sent by his firm to his client pertaining to the malpractice action or to the underlying probate proceedings. On May 30, 2006, an associate from respondent's law firm sent a letter to the judge, attaching attorney-fee bills that had been sent to the client. One bill, dated May 30, 2006, was from respondent's firm, and all others came from other firms that had represented the client during probate proceedings. The judge turned the fee bills over to opposing counsel. Opposing counsel then sought sanctions on the ground that respondent's client had failed to disclose that no fee bills from respondent's firm had existed, notwithstanding the privilege claims. The trial court never ruled on that motion.

{¶ 64} The jury in the attorney-malpractice case returned a verdict in favor of respondent's client. The court of appeals vacated the judgment but refused to reverse the trial court's implicit decision not to sanction respondent's client for frivolous conduct with respect to the fee bills claimed to be privileged. *Muehrcke v. Housel,* 181 Ohio App.3d 361, 2008-Ohio-4445, 909 N.E.2d 135.

**{¶ 65}** The board found that respondent had made misrepresentations during the discovery process, specifically in the way he described the documents his firm was refusing to produce on privilege grounds. This misleading conduct caused opposing counsel to reasonably believe that respondent's firm had actually sent fee bills to its client in the pertinent matters.

**{¶ 66}** Upon review of this matter, the board determined that respondent "did not fulfill his duty of candor toward the trial court or the court of appeals." The board stated that even though respondent knew "full well that [Stafford & Stafford] had never sent written fee bills to [the client] for work done on the malpractice action, Stafford & Stafford nevertheless implied in court filings that they had in fact sent such bills to [the client]." As a result, the board found that respondent's lack of candor warranted a finding that he had violated DR 1-102(A)(5) and 1-102(A)(6). The board based these findings on respondent's failure to candidly dispel misimpressions created by his firm's misleading court filings.

### D. Objections to Count II

**{¶ 67}** Relator objects to the board's findings that the additional violations charged under this count against respondent were not proved by clear and convincing evidence, an argument we reject. Respondent objects to the board's findings, advancing similar arguments to those he asserted for Count I. He argues primarily that he had a good-faith basis for raising arguments of privilege, because those privilege arguments were part of a legal strategy that was bolstered by at least some viable support. Respondent's other objections are centered on what he perceives as the lack of clear and convincing evidence to support the misconduct findings. Respondent's arguments are without merit for two reasons.

**{¶ 68}** First, the record belies respondent's good-faith argument. As determined by the panel and board: "[T]he common thread running through [respondent's] violations is respondent's palpable indifference to discovery

directed at his clients. In each instance, had respondent been even slightly more forthcoming in responding to the discovery * * * he could have spared the courts, his opposing counsel and their clients, and his own clients needless controversy, time, and expense." Second, because the panel was in the best position to assess the credibility of the witness testimony and rejected respondent's testimony that he did not intentionally mislead opposing counsel, we defer to that determination. See *Cuyahoga Cty. Bar Assn. v. Wise*, 108 Ohio St.3d 164, 2006-Ohio-550, 842 N.E.2d 35, ¶ 24 ("Unless the record weighs heavily against a hearing panel's findings, we defer to the panel's credibility determinations, inasmuch as the panel members saw and heard the witnesses firsthand").

{¶ 69} After reviewing the record, we overrule both parties' objections, and instead accept the board's assessment of the evidence and its findings of fact and conclusions of law on this count. Courts cannot function properly unless the lawyers practicing before them observe their duties of candor. See *Disciplinary Counsel v. Rohrer,* 124 Ohio St.3d 65, 2009-Ohio-5930, 919 N.E.2d 180; *Cincinnati Bar Assn. v. Nienaber* (1997), 80 Ohio St.3d 534, 687 N.E.2d 678. In this circumstance, respondent did not fulfill his duty of candor toward the trial court or the court of appeals. He could have done so easily, with no prejudice to his client, and could have spared the courts and his own client almost two years of costly litigation.

## II. Sanction

{¶ 70} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and

Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. Because each disciplinary case is unique, we are not limited to the factors specified in the rule but may take into account "all relevant factors" in determining what sanction to impose. BCGD Proc.Reg. 10(B).

### A. Aggravating and Mitigating Factors

{¶ 71} The board found a number of aggravating factors weighing in favor of a more severe sanction. First, the board found that respondent had committed multiple offenses that were part of a pattern of delaying the discovery process. See BCGD Proc.Reg. 10(B)(1)(c) and (d). The board further found that this disregard of discovery was done to gain a tactical advantage, which suggests a selfish motive, another aggravating factor. BCGD Proc.Reg. 10(B)(1)(b).

{¶ 72} The board also found that respondent had been disciplined previously, also an aggravating factor. BCDG Proc.Reg. 10(B)(1)(a). Respondent received a public reprimand for calling another lawyer an obscene name while the attorneys were in a magistrate's chambers and then continuing to yell at the other attorney after entering the courtroom (a violation of DR 7-106(C)(6): in appearing in a professional capacity, a lawyer shall not engage in undignified or discourteous conduct that is degrading to a tribunal). *Cuyahoga Cty. Bar Assn. v. Gonzalez*, 89 Ohio St.3d 470, 733 N.E.2d 587. In reviewing respondent's previous offense, the board found commonality between that offense and the instant violations, which is another aggravating factor to justify enhancement of the sanction. The board noted that his conduct since his public reprimand shows that he remains "insufficiently mindful and respectful of his distinct role as an officer of the court."

{¶ 73} As a final aggravating factor, the board found that respondent periodically displayed disrespect for assistant disciplinary counsel throughout the

course of the 22-day hearing. It stated that respondent's conduct evinced an unwarranted disrespect for a fellow officer of the court.

{¶ 74} In evaluating whether there were mitigating factors weighing in favor of a less severe sanction, the board noted that respondent did not formally present evidence of mitigating factors, nor did relator. Instead, the panel observed that over the course of over 22 days of hearings, under intense pressure, respondent behaved "appropriately." The board, however, found it impossible to credit respondent with a cooperative attitude toward the proceeding because of the personal criticisms of assistant disciplinary counsel noted above.

*B. Choice of Sanction*

{¶ 75} In considering its sanction, the board pointed to three disciplinary cases that involved attorneys whose responses to discovery directed at their clients showed indifference or a lack of candor, as opposed to neglect. In *Cincinnati Bar Assn. v. Wallace* (1998), 83 Ohio St.3d 496, 700 N.E.2d 1238, the attorney received a public reprimand for engaging in conduct that adversely reflected on her fitness to practice law. At her client's request, to thwart any effort by his ex-wife to collect past-due child support by placing a lien on his home, the attorney had prepared a quitclaim deed on the property to his wife. Before the deed was executed, the attorney received interrogatories asking for the address of any real property owned by her client and gave them to her client on the same day that he signed the quitclaim deed. The client returned the interrogatories to his attorney several weeks after the deed was recorded. Upon noticing that the question regarding real property had been left blank, the attorney was told by her client to write "none" as a response, which she did. The interrogatories were returned to opposing counsel unsigned. We held that the attorney had committed misconduct for not disclosing what she knew to opposing counsel. Id. at 500. We also agreed with the panel's finding that her conduct had

not obstructed the discovery process, because the answer was technically true at the time it was made. Id. at 498.

{¶ 76} In *Marsick,* 81 Ohio St.3d 551, 692 N.E.2d 991, the attorney represented a truck driver who had hit a parked car, killing a passenger and injuring its driver. The attorney repeatedly failed to reveal in discovery responses a tow-truck driver's statement that the truck driver admitted at the scene that he had dozed off while he was driving. The attorney had maintained his silence even when the truck driver testified at his deposition and at trial that he had swerved to avoid a deer. The jury found the truck driver less than 100 percent responsible, and the judgment was affirmed on appeal. After the attorney revealed the truth during subsequent proceedings on a contribution claim, the judgment was vacated. That attorney, who had no prior disciplinary history, received a six-month actual suspension for this violation. Id. at 553.

{¶ 77} In *Columbus Bar Assn. v. Finneran* (1997), 80 Ohio St.3d 428, 687 N.E.2d 405, the attorney flouted his discovery obligations for purposes of delaying the proceedings in multiple cases, even going so far as to dismiss and refile those cases. We stated that the attorney's "tactics of evasion and delay" reflected "a strategy out of keeping with the purpose and intent of our system of orderly procedures." Id. at 431. "Dilatory practices bring the administration of justice into disrepute." Id. For this conduct, as well as his lack of cooperation in the disciplinary process, that attorney was suspended indefinitely.

{¶ 78} Relying upon these cases, and noting that respondent's conduct occurred over several years and involved more than one case, relator asks this court to impose an 18-month actual suspension from the practice of law. Respondent, citing case law, asks the court to sustain his objections and dismiss relator's complaint in its entirety, with costs taxed to relator.

{¶ 79} The board has adopted the recommendation of the panel and recommends that respondent be suspended from the practice of law for 18

months, with 12 months of the suspension stayed on conditions. Respondent challenges this recommendation as being contrary to the purpose of attorney-discipline proceedings. He also challenges the use of his prior disciplinary history as an aggravating factor, and he argues that the recommended sanction is punitive and contrary to law. Having carefully considered each of these arguments, we conclude that the board's findings are amply supported by the record. Accordingly, we overrule respondent's objections and accept the findings of the panel and board with regard to the aggravating and mitigating factors present in this case.

{¶ 80} Respondent also objects to the board's reliance upon *Wallace*, *Marsick*, and *Finneran* and suggests that his conduct is more akin to that of the attorneys in other cases: *Toledo Bar Assn. v. Rust,* 124 Ohio St.3d 305, 2010-Ohio-170, 921 N.E.2d 1056 (count was dismissed because the attorney initiated an action in good faith and had an "arguable basis in law and fact that was not frivolous for filing the claim," id. at ¶ 2); *Findlay/Hancock Cty. Bar Assn. v. Filkins* (2000), 90 Ohio St.3d 1, 734 N.E.2d 764 (misconduct was not established by clear and convincing evidence, despite the board's findings).

{¶ 81} The cases cited by respondent, however, addressed single incidents of misconduct that this court held had not been proved. In contrast, we find that respondent engaged in multiple incidents of misconduct that occurred in two cases spanning several years. Respondent has obstructed and delayed discovery as well as displayed a marked lack of candor. His evident contempt for the discovery process and his lack of respect for other officers of the court demonstrate a profound disrespect for the legal profession.

{¶ 82} Based upon the foregoing, we agree with the board that "respondent's obstructive behavior and lack of candor * * * were just as disruptive to the administration of justice as outright misrepresentations would have been" and that "his conduct warrants a sanction tantamount to that mandated

for misrepresentations, actual suspension." We disagree, however, with the length of the actual suspension. Although respondent's conduct is worse than the conduct that warranted a public reprimand in the *Wallace* case, it does not rise to the level of warranting an indefinite suspension, as did the conduct in *Finneran.* We find that an 18-month suspension with six months stayed is appropriate.

{¶ 83} We emphasize that respondent is not subjected to sanction here because he is a zealous advocate on behalf of clients in the Cuyahoga County Domestic Relations Division of the Cuyahoga County Court of Common Pleas. It is that his lack of candor, his disrespect and discourtesy to fellow officers of the court, and his dilatory discovery tactics are unprofessional and interfere with the orderly administration of justice. As we said in *Disciplinary Counsel v. Trumbo* (1996), 76 Ohio St.3d 369, 373, 667 N.E.2d 1186, "respect for the law and our legal system is the *sine qua non* of [the] right to continuance on the rolls" of those admitted to practice law in Ohio.

{¶ 84} Upon our independent review of the evidence, we hold that the appropriate sanction for respondent's misconduct is suspension from the practice of law for 18 months, with six months of the suspension stayed. We do not agree with the board's recommendation for monitoring during the suspension period, but if respondent engages in further misconduct during the stayed portion of his suspension, the stay will be lifted, and respondent will serve the entire 18 months as an actual suspension. Costs are taxed to respondent.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, CUPP, and MCGEE BROWN, JJ., concur.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Lori J. Brown, Chief Assistant Disciplinary Counsel, for relator.

Reminger Co., L.P.A., George S. Coakley, and John P. O'Neil, for respondent.

_____